**Willie B. HALE, Appellant-Petitioner,**

**v.**

**The BOARD OF COUNTY COMMISSION-ERS OF SEMINOLE COUNTY, Oklahoma, Appellee-Respondent.**

**Nos. 52533, 53576.**

Supreme Court of Oklahoma.

Nov. 27, 1979.

Valdhe F. Pitman, Eufaula, Robert J. Unruh, Jr., Oklahoma City, for appellant-petitioner.

Gordon R. Melson, Dist. Atty., Ada, for appellee-respondent.

OPALA, Justice:

In this matter, originally attempted to be prosecuted in the Court of Criminal Appeals as a misdemeanor appeal, the removed Sheriff [Sheriff] seeks review of an adverse judgment on a jury verdict in a proceeding by the Board of County Commissioners [Board], pursuant to 22 O.S.1971 § 1194, to oust him from office. On the Board's motion to dismiss, the principal question to be answered is whether the Court of Criminal

Appeals or this court, either or both, may take cognizance of an appeal in which review is sought of a judgment rendered in a removal-from-office proceeding initially brought either upon a grand jury accusation pursuant to 22 O.S.1971 § 1182 or, as in this case, upon a resolution of the board of county commissioners acting under the authority of 22 O.S. 1971 § 1194.[1] While we hold that this court has exclusive appellate jurisdiction in ouster-from-office cases, we allow this appeal to stand by giving our pronouncement prospective application and effect in accordance with the doctrine of *Poafpybitty v. Skelly Oil Company*, Okl., 394 P.2d 515, 520 [1964].

The chronology critical to our consideration here begins November 16, 1977 when the Sheriff was found guilty by a jury verdict on five different counts of misconduct in office. His motion for new trial, filed on November 28, was overruled and judgment on the verdict of conviction came to be imposed on December 6, 1977.[2] Within 10 days thereafter the Sheriff filed his "Written Notice of Intent to Appeal, Request for Transcript of Evidence, Request for Preparation of Record and Designation of Record on Appeal".[3] The petition-in-error was sought to be filed with the clerk of the Court of Criminal Appeals on March 23, 1978, within 120 days after judgment, as provided in 22 O.S.1971 § 1054.[4] The record as a whole leaves us without the slightest doubt that the Sheriff's counsel, perhaps mindful of the terms of 22 O.S.1971 § 1191, which require that an ouster proceeding be conducted "in all respects in the same manner as the trial of an indictment for a misdemeanor", has, from the very inception, attempted to prosecute this matter in strict compliance with the procedure applicable to misdemeanor appeals. He was stopped short of completing this task because the clerk, acting on orders of the Court of Criminal Appeals, refused to accept the tendered paperwork for filing as a criminal appeal in this case. Our attention to this problem was drawn some time later when the Sheriff sought here to command the filing of his appeal by mandamus to the Court of Criminal Appeals. On consideration of the Sheriff's plea this court directed the clerk to (a) treat this case ". . . as having been filed in the Court of Criminal Appeals . . ." when the paperwork was originally tendered there on March 23, 1978 and (b) to transfer the case to this court ". . . where it shall be considered as an ordinary civil appeal brought on March 23, 1978 . . ."

■■■■ Although not without at least one attempt at critical reappraisal[5], Oklahoma case law from both this court and that of

1. Under the provisions of 22 O.S.1971 § 1181 et seq. an ouster proceeding may be instituted either by a grand jury accusation or by action of the board of county commissioners. If the proceeding is brought upon grand jury accusation, it is variously styled as "State ex rel. Grand Jury of _____ Co. v. _____" [*State ex rel. Grand Jury of McCurtain Co. v. Pate*, Okl., 572 P.2d 226 [1977]], "State v. _____" [*State v. Smith*, 151 Okl. 183, 3 P.2d 178 [1931]] or "Grand Jury of _____ Co. v. _____" [*Reubin v. Thompson*, Okl., 406 P.2d 263, 264 [1965]]. If the proceeding is brought pursuant to a resolution of the board of county commissioners, it *must* be styled "The Board of County Commissioners of _____ Co. v. _____" [*Smith v. State*, 13 Okl.Cr. 619, 166 P. 463, 464 [1917]; *Muskogee County, Oklahoma v. Lanning & McRoberts*, 51 Okl. 343, 151 P. 1054 [1915]].

2. Unless otherwise authorized by the judge, a motion for new trial in a criminal case must be filed before the date set for imposition of judgment. Rule 2.3B, Rules of the Court of Criminal Appeals, 22 O.S.1971, Ch. 18, App.

3. This procedure appears to *be required* in criminal appeals by Rules 2.3A and 2.7A, Rules of the Court of Criminal Appeals, 22 O.S.1971, Ch. 18, App.

4. Procedure in criminal appeals is governed largely by the Rules of the Court of Criminal Appeals which are given "the force of statute" by the provisions of 22 O.S.1971 § 1051(b). The Sheriff complied both with the controlling statutes and the applicable rules. See Rule 2.3C, Rules of the Court of Criminal Appeals.

5. Justice Riley, dissenting in *McCasland v. Board of Com'rs*, 126 Okl. 103, 258 P. 750, 753 [1927] appealed for a re-examination of the then extant exposition to relabel "a special proceeding in removal of officers" as "criminal in its nature". He called attention to the jurisdictions in which this view had been adopted. See annotation in 81 A.L.R. 1089 [1932].

criminal appeals did, between 1910 and 1977, treat the ouster judgment as "civil" and hence reviewable solely in the Supreme Court.[6] In 1977 *State ex rel. Grand Jury etc. v. Pate*[7] came for consideration. In that case this court held that the provisions of 22 O.S.1971 § 1182 for ouster by grand jury accusation survived the 1971 amendment to Art. 2, § 18 Okl.Con., even though the amendment in question did not expressly authorize the inquisitorial body to exercise that power. The opinion concluded that an accusation under § 1182 "is an indictment charging the commission of a crime"[8] and "that an ouster proceeding has attributes and [is] in the nature of both a criminal action and civil action".[9] While these underlined phrases were no doubt used to acknowledge merely the hybrid nature of the applicable procedure which, since statehood, has required removal proceedings to be conducted as a misdemeanor trial,[10] their use has apparently created some uncertainty among lawyers as to the continued reviewability of the removal-from-office judgments in this court. *Pate* came to be perceived as a sharp break with precedent which placed ouster cases either in the category of criminal appeals or, at least, among *sui generis* proceedings [11] in which both courts may exercise reviewing cognizance.[12] Because of *post-Pate* doubt in the status of removal-from-office appeals, we invoke the powers vested in us by Art. 7, § 4 [adopted in 1967] to settle the jurisdictional question and prevent any recurrence of dispute over our appellate cognizance in these cases. We hold that in all district court proceedings for removal from office, no matter how instituted,[13] this court has exclusive jurisdiction on review and in original proceedings for a prerogative writ.

6. *O'Bryan v. State*, 26 Okl. 470, 109 P. 304 [1910]; *State v. Alexander*, 4 Okl.Cr. 370, 111 P. 655 [1910]; *O'Bryan v. State*, 4 Okl.Cr. 636, 112 P. 763 [1911]; *Myers et al. v. State*, 137 Okl. 272, 278 P. 1106 [1929]; *State v. Scarth*, 151 Okl. 178, 3 P.2d 446, 450 [1931], 81 A.L.R. 1082.

7. Okl., 572 P.2d 226 [1977].

8. 572 P.2d at 228.

9. 572 P.2d at 229.

10. 22 O.S.1971 § 1191.

11. Our research revealed at least one other [post-*Pate*] case in which the jurisdiction of the Court of Criminal Appeals was invoked in reliance on *Pate* to affect a pending removal proceeding by issuance of a writ of prohibition. *George D. Snider, Petitioner v. Lloyd H. Henry, Respondent*, P–78–395. A temporary order staying trial proceedings, issued 7–24–78, was later vacated on 3–6–79 by the decision not to assume original jurisdiction. In its decision the Court of Criminal Appeals recited:
"In *State v. Scarth*, 151 Okl. 178, 3 P.2d 446 (1931), the Oklahoma Supreme Court in its second Syllabus of the Court stated:
'An action to remove an official under a grand jury accusation is in its nature a *civil* and not a criminal action.'
"We realize that this case [was] criticized by the Oklahoma Supreme Court in *State of Oklahoma ex rel. the Grand Jury of McCurtain County v. Pate*, 572 P.2d 262 (1977), but until that court specifically designates ouster proceedings as one of a criminal nature we are without authority to assume jurisdiction."

12. The dichotomous division of Oklahoma appeals into "civil" and "criminal" has never been perfectly airtight. Although case law expressions might reject the concept of "shared" power over any class of appeals by clinging to "undivided" and "exclusive" jurisdiction in each class, *State v. Brown*, 8 Okl.Cr. 40, 126 P. 245, 249 [1912] and *Buck v. Dick, Warden*, 27 Okl. 854, 113 P. 920 [1911], the marketplace reality contradicts such notion. Shared responsibility has been exercised in juvenile delinquency cases, *Anderson v. Walker*, Okl., 333 P.2d 570 [1958] and *Killion v. Walker*, Okl., 334 P.2d 454 [1959], and in direct contempt matters, *Fulreader v. State*, Okl., 408 P.2d 775, 776 [1965] and *Sullivan v. State*, Okl.Cr., 419 P.2d 559, 560 [1966]. Appeals in juvenile delinquency cases are now brought to the Court of Criminal Appeals, 10 O.S.Supp. 1979 § 1123, *Carder v. Court of Criminal Appeals*, Okl., 595 P.2d 416, 419 [1978], while direct contempt and habeas corpus matters remain a "mixed bag." Rule 1.10(c)(1) and (2), Rules on Perfecting a Civil Appeal, 12 O.S. Ch. 15 App. 2.

13. Ouster proceedings may be instituted by grand jury accusation, 22 O.S.1971 § 1182, by resolution of the board of county commissioners, 22 O.S.1971 § 1194, or by the Attorney General, 51 O.S.1971 § 94. Judicial removal proceedings before the Court on the Judiciary, though essentially "civil", are within the exclusive jurisdiction of that court. *Sharpe v. State ex rel. Oklahoma Bar Association*, Okl.Jud., 448 P.2d 301, 306 [1968].

Mindful of *post-Pate* uncertainty, we give our pronouncement prospective application. It will operate with effect from and after the date this opinion is promulgated. *Poafpybitty v. Skelly Oil Company,* supra.

This appeal will be treated as one falling in the *sui generis* class of proceedings over which either court of last resort may exercise jurisdiction. Since the case was timely brought in the other court, we reaffirm our previous order of transfer and deny the motion to dismiss.[14]

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS and DOOLIN, JJ., concur.

HARGRAVE, J., disqualified.

14. For appeals from *sui generis* proceedings our Rules 1.10(c)(1) and (2), as amended to become effective June 1, 1974, provide that if the case is brought *timely* in the *wrong* court, it shall be deemed *timely* in the *proper* forum.