A.R. HEIMAN, Neva L. Harris, Nina L. Kridler, John Chiaf, G.R. Brecheisen, Lee O. Brecheisen, A.E. Martin, Joe S. Snider, George D. Gallaspy, Hugh Howard, III, R.C. Bradley, Trustee of the R.C. Bradley Revocable Trust, Dated 12/1/79, F.M. Tarpley, Trustee of the F.M. Tarpley Revocable Trust, Dated 12/1/79, Amroy Co., an Oklahoma corporation, Gallaspy Oil Properties, Ltd., an Oklahoma limited partnership, Latigo Oil & Gas Exploration Program, Ltd., an Oklahoma limited partnership, Appellees,

v.

ATLANTIC RICHFIELD COMPANY, a Delaware corporation, ANR Production Co., a Delaware corporation, Edwin L. Cox, Natomas North America, Inc., a California corporation, Ricks Exploration Co., an Oklahoma corporation, Sabine Production Company, a Louisiana corporation, Woods Petroleum Corp., a Delaware corporation, Appellants,

and

Tenneco Oil Company, a Delaware corporation, Defendant.

No. 70739.

Supreme Court of Oklahoma.

March 5, 1991.

Val R. Miller, Harvey D. Ellis, Crowe & Dunlevy, P.C., Oklahoma City, for all appellants Except ANR Production Co.

William R. Elias, Sharon Taylor Thomas, Watson & McKenzie, P.C., Oklahoma City, for appellant, ANR Production Co.

David L. Fist, Mark S. Rains, Messrs. Rosenstein, Fist & Ringold, Tulsa, for appellees.

OPALA, Chief Justice.

The two issues presented in this certiorari proceeding are: (1) Is the trial court's dismissal order, which preceded the judgment from which the defendants appealed, *facially void* for want of constitutionally sufficient notice? and (2) Was the Court of Appeals correct in dismissing the appeal? We answer the first question in the affirmative, and the second in the negative.

## I.

### THE ANATOMY OF LITIGATION

A group of working interest owners in a gas well (plaintiffs or owners) sued for an accounting and "cash balancing" to recover their pro rata shares of production sales proceeds. During discovery the case came to be placed on the district court's "disposition docket." [1] According to the record the parties received notice of the disposition-docket setting by *publication* authorized by the terms of 20 O.S.1981 § 1304A; [2] the lawsuit was *dismissed sua sponte* "for want of prosecution" on October 30, 1986. While this dismissal's effect upon the appellate review process lies at the heart of this certiorari proceeding, it suffices to say that during the critical stages of nisi prius litigation the terminal order appears to have gone unnoticed by the parties as well as by the trial judge. Nearly a year after

---

1. See Rule 14(a), Rules on Administration of Courts, 20 O.S.1981, Ch. 1, App. 2, whose terms provide:

 "a. Upon order of the chief judge of the county or the presiding judge of the judicial administrative district, *the district court shall hold* at least one jury and one nonjury term and *at least one disposition docket in each county each calendar year.* At the disposition docket, *any action which is not at issue and in which no action has been taken for a year shall be dismissed as prescribed by 12 O.S.1971 § 1083, [infra]* subject to the proviso contained therein." (Emphasis added.)

 The terms of 12 O.S.1981 § 1083 provide:

 "Any action which is not at issue and in which no pleading has been filed or other action taken for a year and in which no motion or demurrer has been pending during any part of said year *shall be dismissed without prejudice by the court on its own motion after notice to the parties or their attorneys of record;* providing, the court may upon written application and for good cause shown, by order in writing allow the action to remain upon its docket." (Emphasis added.)

2. The pertinent terms of 20 O.S.1981 § 1304A provide:

 In each county with a population of more than two hundred thousand ..., *the chief judge of the district court may,* with the concurrence of the majority of the district judges regularly serving in the county, *authorize the publication of the court dockets in a daily newspaper* designated by order of such judges, which newspaper is qualified by law to publish legal notices. * * * " (Emphasis added.)

the action's "disposition" by dismissal, the plaintiffs sought summary judgment, and, in advance of a ruling on their motion the parties formally stipulated that the "cash balance" owed the plaintiffs is $535,496.23. The joint stipulation left but one issue for the trial court's determination—whether the defendants (appellants) must pay interest on the agreed sum and, if so, how much. The trial court summarily found $303,164.09 to be the owners' due. Defendants appealed.[3]

The Court of Appeals—before reaching the errors tendered for review—discovered what it perceived to be a void in the record. To the appellate court it "appear[ed] that the trial court lacked jurisdiction" to give the owners summary judgment because the record contains "no order or other document evidencing that the trial court [had] vacated the [October 30, 1986] dismissal." The parties were then directed by the Court of Appeals to seek jointly a *"nunc pro tunc* memorialization" of the vacation *if* the disposition-docket dismissal had been in fact set aside. In the event of their failure to secure the nunc pro tunc order, the appellants were to "show cause why the appeal should not be dismissed."

In an attempt to comply with the Court of Appeals' directive, plaintiffs alone and unopposed sought and obtained an order vacating the October 30 dismissal. According to the journal entry, the trial judge relied upon the terms of 12 O.S.1981 § 1031(Third),[4] which authorize an order's vacation for "irregularity." On consideration of this mid-appeal ruling, the Court of

Appeals *dismissed the appeal,* holding that the three-year statute of limitations[5] was a bar to the plaintiffs' quest to extinguish the earlier disposition-docket dismissal. The appellate court further held that since the October 30 order of dismissal is "not facially void" and is beyond the reach of the court's authority to vacate, the post-dismissal summary judgment for the owners was "in excess of the trial court's power." Certiorari was granted upon owners' petition.

Owners argue, *inter alia,* the October 30 dismissal order, asserted as *void* for want of advance personal notice, posed no jurisdictional impediment to the trial court's later rendition of summary judgment in their favor. The defendants—respondents in this certiorari proceeding—maintain the Court of Appeals correctly dismissed the appeal. They urge that the owners' mid-appeal nisi prius quest for vacation relief from the October 30 dismissal—an adjudication perceived to have terminated the trial court's power to render the later judgment—is time-barred. We hold the October 30 dismissal order to be *facially void*[6] and hence within the trial court's power to vacate by its mid-appeal ruling.[7]

## II.

## THE OCTOBER 30 ORDER OF DISMISSAL IS *VOID* FOR WANT OF CONSTITUTIONALLY ADEQUATE NOTICE

 The terms of the trial court's dismissal order clearly indicate that notice of

---

3. The term "defendants" does not include Tenneco Oil Company. During an early stage of litigation the plaintiffs voluntarily dismissed their claim against that entity.

4. The terms of 12 O.S.1981 § 1031(Third) provide:
 "The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter:
 " * * *
 "Third. For mistake, neglect or omission of the clerk *or irregularity in obtaining a judgment or order."* (Emphasis added.)

5. See 12 O.S.1981 § 1038, whose pertinent terms are:
 *"Proceedings to vacate or modify a judgment or order* * * * for the causes mentioned in

subdivisions *three* and six of [§ 1031] ... *shall be [commenced] within three (3) years ... after the defendant has notice of the judgment. A void judgment may be vacated at any time,* on motion of a party, or any person affected thereby." (Emphasis added.)

6. See 12 O.S.1981 § 1038, *supra* note 5.

7. Before the court on certiorari is another controversy over the inclusion into the record of the motion to vacate filed during the mid-appeal proceedings ordered by the Court of Appeals. Since the motion is not critical to our consideration of the dispositive issue, we do not rule on the objection to its incorporation into the appellate record.

the action's placement on the disposition docket was given by *publication alone.* Indeed, *nothing* on the face of the judgment roll shows *either* that the parties had actual notice of the setting *or* that any medium other than publication was employed to inform the parties of the then-impending *sua sponte* action by the trial court.[8] The October 30 dismissal had the effect of terminating the plaintiffs' right to press their claim without undue interruption—a property interest shielded by the Due Process Clause of the Fourteenth Amendment.[9] Inasmuch as a constitutionally adequate notice is a *precondition* to the exercise of *in personam* jurisdiction,[10] its absence from the face of the judgment roll makes an adjudication void.[11] The precise question to be answered here is whether the notice given by the trial court before its October 30 disposition-docket dismissal meets the minimum standards of due process. We hold it does not.

The Due Process Clause of the Fourteenth Amendment inexorably commands that "prior to an action which will affect an interest in ... property ... a State must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[12] Applying this *sine qua non* requirement of due process, we hold today that the statutorily authorized[13] publication notice was not sufficient to inform the plaintiffs and defendants of the disposition-docket setting.

In *Swanson v. Gick*[14] publication notice of a disposition docket stands condemned as constitutionally deficient. There, we reversed the trial court's denial of plaintiff's quest for vacation of her action's dismissal. As in *Swanson,* the trial court here could have easily secured the mailing address of the affected counsel to be served. The parties could have hence been "notified by more effective means such as personal service or mailed notice."[15] In these situations "[n]otice by mail or other means as certain to ensure actual notice is a *minimum constitutional precondition"* to the valid exercise of *in personam* jurisdiction at every critical stage of litigation.[16]

---

**8.** It is undisputed that the defendants as well as the plaintiffs were *for the first time* apprised of the October 30 dismissal *when the Court of Appeals directed them to cure what appeared to have been a deficiency in the record* by obtaining an order nunc pro tunc showing the dismissal had been vacated.

**9.** *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982).

**10.** See *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983), where the Court held that "[n]otice by mail or other means as certain to ensure actual notice is a *minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party....*" (Emphasis added.); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 320, 70 S.Ct. 652, 660, 94 L.Ed. 865 (1950), where the Court held that notice by publication of judicial settlement of trust accounts "is incompatible with the requirements of the Fourteenth Amendment *as a basis for adjudication depriving known persons whose whereabouts are also known of substantial property rights."* (Emphasis added.).

**11.** *Capitol Federal Savings Bank v. Bewley,* Okl., 795 P.2d 1051, 1054 (1990).
A decision is facially void if an inspection of its record proper shows that one or more of the jurisdictional elements—subject matter and *in personam* cognizance as well as the power to render a particular decision—appears to have been absent. *Hough v. Hough,* Okl., 772 P.2d 920, 921 (1989); *Mayhue v. Mayhue,* Okl., 706 P.2d 890, 893 n. 8 (1985); *Scoufos v. Fuller,* Okl., 280 P.2d 720, 723 (1955).

**12.** *Mennonite Board of Missions v. Adams, supra* note 10, 462 U.S. at 795, 103 S.Ct. at 2709–2710, quoting from *Mullane v. Central Hanover Bank & Trust Co., supra* note 10, 339 U.S. at 314, 70 S.Ct. at 657.

**13.** See 20 O.S.1981, § 1304A, *supra* note 2.

**14.** Okl., 805 P.2d 662 (1991).

**15.** *Mennonite Board of Missions v. Adams, supra* note 10, 462 U.S. at 791, 103 S.Ct. at 2708; *Mullane v. Central Hanover Bank & Trust Co., supra* note 10, 339 U.S. at 314, 70 S.Ct. at 657. See also *Bomford v. Socony Mobil Oil Co.,* Okl., 440 P.2d 713, 718 (1968), where the court held that publication notice is constitutionally insufficient when the names and addresses of affected persons were "known or readily ascertainable from the sources at hand."

**16.** See *Mennonite Board of Missions v. Adams, supra* note 10, 462 U.S. at 800, 103 S.Ct. at 2712.

*There is no duty to monitor the court's docket for appealable events.*[17]

■ We note that while published notice of the disposition docket appears authorized by statute, if the setting to take place may result in an end-of-the-line order—one marking an event dispositive of or terminating the litigation—*personal notice is required,* whether it be effected by personal service or by mail. Rule 23, Rules of the Seventh Judicial District,[18] gives no comfort to the argument of the defendants. While its terms do specify the day and time for the annual disposition-docket setting in Oklahoma County[19] and expressly provide that notice be given by publication, *Swanson* teaches that general notice of a disposition-docket time is not knowledge of a particular action's placement on that docket.[20] Today's pronouncement is also consistent with the regime imposed by Rule 27, Rules of the District Court.[21] The cited rule re-

quires notice of a dispositive *in absentia* ruling to be *mailed* to the parties.[22] This was not done here after the October 30 *in absentia* disposition-docket dismissal.

In sum, the court setting for a ruling dispositive of an action constitutes a critical stage of litigation. Advance personal notice of such setting is one's constitutional due.[23] "Mail service can be utilized as an inexpensive and efficient mechanism to enhance the reliability of the otherwise unreliable procedure of notice by publication."[24]

### III.

### THE COURT OF APPEALS WRONGLY DISMISSED THE APPEAL

■ The October 30 disposition-docket dismissal—an adjudication *void on its face* for want of a constitutionally adequate notice—was vulnerable to vacation *at any time.*[25] The trial court's mid-appeal vaca-

---

**17.** *McCullough v. Safeway Stores, Inc.,* Okl., 626 P.2d 1332, 1334 (1981).

**18.** Rule 23 (formerly Rule 40), Rules of the Seventh Judicial District, provides:

"Each division of the Court *shall hold a disposition docket at 1:30 P.M. on the last Thursday in October* of each case that has been on file for two (2) years or more and with no activity within one year. *All* civil, domestic, and small claims cases shall be included on said docket.

"*Notice* of said docket, listing the cases thereon, *shall be published* in The Journal Record for Oklahoma County continuously for a period of two weeks prior to the date of said disposition docket.

"In addition, *notice* of said docket *shall be published* continuously in the Oklahoma Bar Journal for a period of four (4) weeks prior to said disposition docket." (Emphasis added.)

**19.** Judicial District No. 7 is comprised of Oklahoma County alone. 20 O.S.1981 § 92.8.

**20.** *Swanson v. Gick, supra* note 14, 805 P.2d at 664. See also *Mennonite Bd. of Missions v. Adams, supra* note 10, 462 U.S. at 799–800, 103 S.Ct. at 2711–2712, where the Court held that a property owner's knowledge of his delinquency in payment of taxes does not amount to notice of a pending tax sale.

**21.** The pertinent terms of Rule 27, Rules for the District Court, 12 O.S.Supp.1985, Ch. 2, App., provide:

" * * *

"Upon entering and filing the decision with the court clerk, *it shall be the duty of the judge to see that copies of the minute of order or judgment* setting out such decision *are delivered or mailed by the court clerk to counsel in the case* .... The time to appeal from a decision rendered in absentia runs from the day its copy is mailed or personally delivered to the parties." (Emphasis added.)

**22.** Today's opinion is not inconsistent with our holding in *McCrary v. McCrary,* Okl., 764 P.2d 522, 526–527 (1988). There, the appellant had sought corrective relief from an adverse decision in a case which had earlier been placed on the disposition docket and dismissed for want of diligent prosecution. We held that the dismissal was inefficacious to terminate the trial court's power subsequently to rule against the appellant. This is so because notice of the *in absentia* dismissal had not been mailed to the parties.

**23.** See *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), where the Court held that "[a] fundamental requirement of due process is 'the opportunity to be heard.' * * * It is an opportunity which must be granted at a meaningful time and in a meaningful manner." (Citation omitted.)

**24.** *Cate v. Archon Oil Co., Inc.,* Okl., 695 P.2d 1352, 1356 (1985).

**25.** See the provisions of 12 O.S.1981 § 1038, *supra* note 5; *Hough v. Hough, supra* note 11 at 921; *Mayhue v. Mayhue, supra* note 11 at 895; *Scoufos v. Fuller, supra* note 11 at 723.

tion of that dismissal was validly effected. The trial judge's reliance upon the terms of 12 O.S.1981 § 1031(Third) [26] is inconsequential. Regardless of that statute's applicability—an issue we need not reach, a trial court's *correct* decision must be upheld even if it was rested upon an erroneous legal theory.[27] The Court of Appeals' *sua sponte* dismissal of defendants' appeal was clearly unwarranted.

By expressing the view that the earlier October 30 dismissal operated to deprive the trial court of power to give the later summary judgment for the plaintiffs, the Court of Appeals must have assumed that *all* proceedings below subsequent to the dismissal were *coram non judice*. Ironically, what appears to have been the appellate court's avowed objective—an invalidation of the summary judgment—was not brought about by its disposition of the appeal. *An appeal's dismissal is the functional equivalent of a judgment's affirmance*—the very thing the appellate court did not desire to accomplish.[28]

THE COURT OF APPEALS' OPINION IS VACATED; CAUSE RE–TRANSFERRED TO THAT COURT FOR REVIEW OF ERRORS TENDERED BUT NOT REACHED BECAUSE OF PREOCCUPATION WITH THE SPURIOUS "JURISDICTIONAL" BARRIER.

All Justices concur.

**26.** For the terms of 12 O.S.1981 § 1031(Third) see *supra* note 4.

**27.** *Matter of Estate of Bartlett,* Okl., 680 P.2d 369, 374 (1984); *Benham v. Keller,* Okl., 673 P.2d 152, 154 (1983); *G.A. Mosites Co. of Ft. Worth, Inc. v. Aetna Cas. & S. Co.,* Okl., 545 P.2d 746, 752 (1976); *Thompson v. Inman,* Okl., 482 P.2d 927, 937 (1971).

**28.** *Stumpff v. Harper,* 90 Okl. 195, 214 P. 709 (1923) (the court's syllabus ¶ 1); *State ex rel. Mothersead,* 128 Okl. 245, 262 P. 658 (1928) (the court's syllabus ¶ 2). See also *Matter of Estate of Burkhart v. Wabaunsee,* Okl., 594 P.2d 361, 363 (1979); *Morrison v. Board of Education of Ind. Sch. Dist. No. 6,* Okl., 424 P.2d 963, 965 (1967).