**Benny G. BUSHERT, Appellee,**

v.

**Loyd HUGHES, d/b/a Perry Auto Repair, Appellant.**

No. 85395.

Supreme Court of Oklahoma.

Feb. 20, 1996.

Carolyn S. Smith, Ponca City, Vicky J. Maine, Perry, for appellant.

David R. Barnes, Oklahoma City, for appellee.

OPALA, Justice.

### INTRODUCTION

The issues which Bushert's quest for the appeal's dismissal tenders are: (1) If the losing party's lawyer *assists* in the preparation of the order disposing of the matter taken under advisement, does such participation require counsel to monitor the case filings in the court clerk's office for the occurrence of the appealable event (the order's filing)? and (2) Is the court clerk statutorily required to mail to all parties of record file-stamped copies of orders that memorialize matters taken under advisement? We answer both questions in the affirmative.

Because the statutory process [1] prescribed for handling today's critical memorial (1) is *new* and represents a drastic departure from past courthouse practice, (2) is found in an obscurely written statute, and (3) presents a procedural trap for the unwary, we save Hughes' appeal from dismissal by giving today's order purely prospective effect, in accordance with the teachings of *Poafpybitty v. Skelly Oil Company*, Okl., 394 P.2d 515, 520 (1964).[2]

## I

### THE ANATOMY OF LITIGATION

Bushert brought an action against Hughes on breach-of-contract and fraud theories. Within ten days of the judgment's entry on a jury verdict in favor of Bushert, Hughes filed a motion for new trial.[3] *The motion was taken under advisement.*[4]

---

1. For the *sine qua non* elements of the statutory process prescribed for handling memorials that embody matters taken under advisement, see *infra* section II.

2. *Hale v. Bd. of Cty. Com'rs of Seminole Cty.*, Okl., 603 P.2d 761, 764 (1979); *Isbell v. State, Etc.*, Okl., 603 P.2d 758, 760 (1979) (Opala, J., concurring specially). *Hale's* and *Isbell's* rationale followed that of *Poafpybitty*, where the court applied prospectively its pronouncement on whether errors of law may be saved for review by their inclusion in a motion for new trial. The aggrieved party in *Hale* timely appealed to the Court of Criminal Appeals from an adverse judgment in a grand jury-initiated ouster proceeding. Because the law was unclear whether the case should have been brought in that court rather than in the Supreme Court, we (a) saved the appeal that was timely filed *in the wrong court* and (b) treated it as though it had been timely filed *in this court*. The appellant in *Isbell* commenced an appeal after the lapse of the 30–day period provided for APA-governed cases. She relied on an *ineffective* 60–day statute still on the books. We saved her appeal from the trap of a not-so-readily detectable change in statutory law. *See also Heimbach v. Guiney*, Okl., 827 P.2d 170 (1992), for another example of our recent *purely prospective* application of appellate procedure prescribed by an obscurely articulated statute.

3. Hughes' motion—wrongly titled "motion to vacate"—is treated as a *motion for new trial*. It was filed within ten days of the jury verdict's entry and is rested on grounds available to the movant under the terms of 12 O.S.1991 § 651. *See Schepp v. Hess*, Okl., 770 P.2d 34, 36 n. 2 (1989); *Pierson v. Canupp*, Okl., 754 P.2d 548, 550 n. 1 (1988); *Horizons, Inc. v. Keo Leasing Co.*, Okl., 681 P.2d 757, 758–59 (1984). *See also* the terms of 12 O.S.1991 § 651.

4. *See* Vicky J. Maine Beier's [Hughes' counsel at trial] affidavit, attached to Hughes' response to Bushert's motion to dismiss this appeal, whose terms inform us that the case remained under advisement for ruling on the new trial motion. The affidavit stands *undenied*.

In a handwritten February 3, 1995 *minute* (*unsigned* but likely penned by the judge) the trial court encapsulated its decision (a) denying Hughes' motion for new trial and (b) allowing him until February 17, 1995 to respond to Bushert's motion for a counsel-fee award and costs.[5] A nisi prius order—dated February 13, 1995 and *filed on February 16, 1995*—memorializes this denial. The order was prepared by Bushert's counsel and *approved by Hughes' lawyer.*[6] The day after this order was filed *Hughes' counsel* moved to stay the trial court's decision on awarding a counsel fee and costs "*until the issuance of a mandate from the appeals [sic] court.*"

*The record* does *not* disclose that copies of the *critical order* denying Hughes a new trial *were ever mailed to the parties* by *either* the court clerk *or* Bushert's counsel.[7] *Nor does the February 16 journal entry facially identify the memorialized decision as one made*

*after the case had been taken under advisement.* On March 20, 1995 Hughes' counsel *received from Bushert's lawyer* a file-stamped copy of the order.[8] Hughes brought his appeal on April 12, 1995[9]—within 30 days of his *receipt of the order's file-stamped copy* but more than 30 days of the original's filing. Bushert moved to dismiss the appeal as *untimely.*

## II

## THE *STATUTORY REGIME* FOR THE PREPARATION AND FILING OF JUDGMENTS AND ORDERS THAT MEMORIALIZE A DECISION MADE AFTER THE CASE HAS BEEN TAKEN UNDER ADVISEMENT

*Effective October 1, 1993,* the Legislature amended the procedure for the preparation and filing of "judgments, decrees and appealable orders" which embody matters that

---

**5.** The appearance docket reflects that a copy of the February 3 court minute was mailed that day to all parties' counsel. While the appearance docket may *not* be accepted by a reviewing court as a proper substitute for the memorialized entry of judgment or orders or of any proceedings occurring at nisi prius, it may serve in an appellate tribunal as an authoritative source for identifying the instruments the court clerk has filed in the case or for establishing any other matter which by law is required to be spread on the docket. *Martin v. Lib. Nat. Bank & Trust,* Okl., 839 P.2d 179, 179–80 (1992); *Hulsey v. Mid-America Preferred Ins. Co.,* Okl., 777 P.2d 932, 935 n. 5 (1989); *Little v. Employer's Casualty Co.,* 180 Okl. 628, 71 P.2d 687, 687–88 (1937).

**6.** Oklahoma's *staffless* district court judges customarily dispose of issues taken by them under advisement in the following manner: (1) the trial court notifies the parties of its ruling by a copy of a minute, by letter or by telephone; (2) the prevailing party's counsel then prepares the memorial; (3) opposing counsel approves the draft "as to form"; and (4) upon securing the judge's signature, *the prevailing party's counsel* files the order in the court clerk's office. This process— *the same as that used in this case* to finalize the February 13 memorial—is consistent with the prevailing long-time practice.

**7.** The person who mails a copy of the order disposing of the issue taken under advisement is *statutorily* required to file a "Certificate of Mailing" in the court clerk's office. *See* 12 O.S.Supp. 1993 § 696.2(B), whose pertinent terms are: "Where a matter is taken under advisement, the court *shall state* in the written judgment, decree or appealable order *that the matter*

*was taken under advisement.* Promptly after the filing of such judgment, decree or appealable order, *the court shall cause file-stamped copies . . . to be mailed to all parties* who have entered an appearance or who have appeared in the action. The copies shall state the date of mailing. *The person who mailed the copies . . . shall file a Certificate of Mailing* showing to whom the copies . . . were mailed, the addresses to which they were mailed, and the date of mailing." [Emphasis added.]

**8.** *See* Vicky J. Maine Beier's [Hughes' counsel at trial] affidavit attached to Hughes' response to Bushert's motion to dismiss this appeal. The reference stands undenied by opposing counsel.

**9.** The jury verdict in the case was *received* on October 18, 1994. A written memorial of the judgment on that verdict—*capable of triggering appeal time by force of 12 O.S.Supp.1993 § 696.3*—was not filed until December 2, 1994. Although brought *before* the December 2 judgment was entered, Hughes' motion for a new trial, filed within ten days of the jury verdict's reception, came *timely* to extend appeal time. *See* 12 O.S.Supp.1994 § 653(C), whose pertinent terms are:

"C. A motion for new trial filed after the announcement of the decision on all issues in the case but before the filing of the judgment or decree shall be deemed filed immediately after the filing of the judgment or decree."

*See also infra* note 15 for a discussion of the effect post-trial motions have on appeal time.

stood under advisement. The new process—prescribed by the terms of 12 O.S.Supp.1993 § 696.2(A) and (B) [10]—appears *to contemplate the trial judge's preparation of the journal entry.* [11] To meet the statute's *minimum* criteria the court's draft of its ruling must *"state ... the matter was taken under advisement."* [12] The new scheme also requires that *after* the order is filed, a file-stamped copy must be *"promptly" mailed* to all parties who have entered an appearance in the action. [13] A "Certificate of Mailing", which is to be *filed in the case,* must show *when, where and to whom* the file-stamped copy was mailed. [14] It is the copy's *mailing date, as it appears on the filed certificate,* that triggers the running of appeal time in *matters taken under advisement.* [15] *None of this procedure's elements was followed in the case before us.*

### III

#### A LITIGANT'S LAWYER WHO *APPROVES* THE FORM OF A NISI PRIUS ORDER BECOMES OBLIGATED TO MONITOR THE CASE

10. The pertinent provisions of 12 O.S.Supp.1993 § 696.2(A) are:

"... The court may direct counsel for any party to the action to prepare a draft for the signature of the court, in which event, the court may prescribe procedures for the *preparation and timely filing* of the judgment, decree or appealable order, including, but not limited to, the time within which it is to be submitted to the court...." [Emphasis added.]

For the pertinent terms of 12 O.S.1991 § 696.2(B), see *supra* note 7.

11. The trial judge may delegate this responsibility to a party's counsel. For the pertinent terms of § 696.2(A), see *supra* note 10.

12. *See* the terms of 12 O.S.Supp.1993 § 696.2(B), *supra* note 7.

13. *See* the terms of 12 O.S.Supp.1993 § 696.2(B), *supra* note 7.

14. *See* the terms of 12 O.S.Supp.1993 § 696.2(B), *supra* note 7.

15. *See* 12 O.S.Supp.1993 § 990.2(C), whose pertinent terms provide:

### FILINGS IN THE COURT CLERK'S OFFICE FOR THE APPEALABLE EVENT'S OCCURRENCE (THE ORDER'S FILING)

■ The *process* [16] for finalizing the journal entry in this case was initiated when the trial judge mailed to the parties a copy of a February 3, 1995 minute and apprised them of the ruling that denied the motion for new trial. Bushert's counsel then prepared the February 13 memorial of the nisi prius decision and Hughes' counsel *approved* it. The trial judge signed the order. It was filed on February 16, 1995. Although the *journalization process*—set in motion by the trial court and carried out by the parties—tracks the immemorial courthouse practice, the procedure so used is no longer acceptable. *Neither the parties nor the judge attempted to comply with the current legislative requirements that govern the preparation and mailing of orders memorializing matters taken under advisement.* [17]

"If a judgment, final decree or order has been taken under advisement, all times referred to in this section shall run from the date of mailing of a file-stamped copy ... to the appealing party, *as indicated on the Certificate of Mailing....*" [Emphasis added.]

*See also* the terms of 12 O.S.Supp.1993 § 990A(A), which provide that an appeal from an order memorializing a ruling on a matter taken under advisement must be commenced within 30 days of the date of *mailing a file-stamped copy of the judgment or order—"as indicated on the Certificate of Mailing."* [Emphasis added.]

16. For individual components of the customary courthouse practice in use before the statute's enactment, see *supra* note 6.

17. For the statutory process for orders that decide issues taken under advisement, see section II, *supra* and note 7, *supra.*

When measured by the terms of § 696.2(B), the February 16 order is *deficient.* It does *not* contain the mandatory recitation that it memorializes a "matter that was taken under advisement." Nor is there *in the record* a "Certificate of Mailing" evidencing *when, where and to whom* a copy of the February 16 order was mailed.

By approving the February 13 order Hughes' counsel acquiesced in a *practice shortcut* for the order's preparation and entry. *She can hardly be heard to claim that she is entitled to the protection of the very procedure which she helped to circumvent.* Upon approving the February 13 memorial and forwarding it to the victor's lawyer, Hughes' counsel became obligated to monitor further filings in the case for the appealable event's occurrence—*the memorial's filing*—in order to meet the deadline for bringing an appeal.[18]

## IV

## THE LEGISLATURE'S POWER TO PRESCRIBE WHEN APPELLATE JURISDICTION SHALL BE INVOKED *CANNOT* BE THE SUBJECT OF AN OPEN–ENDED DELEGATION TO A PRIVATE PARTY

■ *In cases taken under advisement* (1) delivery of the judge-signed journal entry to the court clerk and (2) the later mailing of a file-stamped copy to the appealing party are *today* the statutory *sine qua non* of when an appealable event occurs.[19] To sanction a standardless delegation to a private party of the capacity to tinker with this process—by allowing the prevailing party's counsel to meet, at whim, the § 696.2(B) mailing requirements and thus to seize absolute control over the appeal-time trigger—would render § 696.2(A) and (B)[20] constitutionally questionable, if not indeed infirm.

### A

## DELEGATION TO A PRIVATE PARTY OF THE POWER TO CONTROL THE APPEAL–TIME TRIGGER OFFENDS THE NEUTRALITY ESSENTIAL TO THE PROPER FUNCTIONING OF THE JUDICIAL PROCESS

Open-ended power over the appeal-time trigger may not be *delegated* to private parties or their agents *without standards.* An abdication of control would offend the law's basic principle of neutrality in the administration of judicial process. It would make the appealable event's occurrence depend *entirely* upon the will and whim of the aggrieved party's victorious opponent.[21] Public confidence in the *neutral* functioning of the judicial process, which is essential to the rule of law, would be undermined.[22]

### B

## *STANDARDLESS* DELEGATION OF CRITICAL GOVERNMENTAL POWER TO A PRIVATE PERSON IS CONSTITUTIONALLY IMPERMISSIBLE

■ Because appellate jurisdiction must be invoked in the manner provided by law,[23]

---

18. Unlike in *McCullough v. Safeway Stores, Inc.,* Okl., 626 P.2d 1332, 1334 (1981), *before the appealable event occurred in this case,* both Hughes and Bushert's counsel were afforded notice by the nisi prius judge of the court's denial of the motion for new trial—until then under his advisement.

19. *See supra* note 15 for the pertinent statutory provisions.

20. For the pertinent terms of 12 O.S.Supp.1993 § 696.2(A) & (B), see *supra* notes 10 and 7.

21. *See* Okl.Const. art. 2 § 7, which states:
    "No person shall be deprived of life, liberty, or property, without due process of law."
    *See also Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973), where the Court states:
    "It is sufficiently clear from our cases that those with substantial pecuniary interest in

legal proceedings should not adjudicate these disputes. *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). And *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), indicates that the financial stake need not be as direct or positive as it appeared to be in *Tumey.* It has also come to be the prevailing view that '[m]ost of the law concerning disqualification because of interest *applies with equal force to ... administrative adjudicators.'* K. Davis, Administrative Law Text § 12.04, p. 250 (1972), and cases cited." [Emphasis added.]

22. *See In re Vitale,* 151 Vt. 580, 563 A.2d 613, 617 (1989); *People ex rel. Clancy v. Superior Court of Riverside County,* 39 Cal.3d 740, 218 Cal.Rptr. 24, 27, 705 P.2d 347, 350 (1986), which call in like terms for neutrality in the judicial process.

23. Okl. Const., art. 7 § 4, provides in pertinent part:

the power to determine *when* the appeal-time clock begins must remain within the government's control. Our extant jurisprudence condemns all *standardless* delegation of power.[24] The condemnation's genesis lies in a principle of constitutional dimension known under the Latin maxim of *delegata potestas non potest delegari*.[25] It is an extratextual yardstick for measuring legislative conformity to the constitution's prohibition against unlawful abandonment of power.

■ When a statute—in this case 12 O.S.Supp.1993 § 696.2(A) and (B)[26]—is susceptible of more than one meaning, the court's duty is to give it that construction which would save the legislation from *facial absurdity*[27] and make it impervious to constitutional attack.[28] Empowering a prevailing party's counsel to determine, at will, when appeal time will commence[29] would operate to condemn § 696.2(B) as *unconstitutional*. It would endorse the *standardless delegation of the government's power to a private party*. We must hence construe the terms of § 696.2(A) and (B) to mandate that (a) orders memorializing matters taken under advisement *shall be filed* in the court clerk's office *immediately after the trial judge's signature is affixed* and (b) *the court clerk* shall *"promptly"* (1) mail a copy of the *file-stamped* original order to the parties of record and (2) prepare and place on file the required *certificate of mailing*.

Interpreting § 696.2(B) to mandate that *the court clerk*—rather than a *private party's counsel*—mail the critical notice to the parties (a) assures that the appealing party will be given *timely* notice of the order's filing and (b) makes the law *consistent* with the legislative command for all orders which memorialize *matters taken under advisement to plainly so recite*. Under today's construction a conspicuous reference in the journal entry to "matter taken under advisement"[30] will serve to advise the *court clerk* that file-stamped copies must be mailed to the parties appearing in the case or to their counsel of record.

## V

## GUIDANCE FOR DETERMINATION OF WHEN TIME TO APPEAL BEGINS TO RUN FROM ORDERS WHICH DISPOSE OF MATTERS TAKEN UNDER ADVISEMENT

Because (a) this case addresses itself to a relatively new statutory standard[31] for memorials of matters taken under advisement and (b) recent appeals have convinced us that

---

" * * * The appellate and the original jurisdiction of the Supreme Court and all other appellate courts *shall be invoked in the manner provided by law.*" [Emphasis mine.]

**24.** *The City of Oklahoma City v. State ex rel. Dept. of Labor*, Okl., 66 OBJ 3184, 3187, —— P.2d ——, —— (1995); *Democratic Party of Oklahoma v. Estep*, Okl., 652 P.2d 271, 277 n. 23 (1982); *American Home Products Corporation v. Homsey*, Okl., 361 P.2d 297, 301 (1961); *Herrin v. Arnold*, 183 Okl. 392, 82 P.2d 977, 982 (1938).

**25.** This maxim means that "delegated authority cannot be re-delegated". *See Warner v. Martin*, 11 How. 209, 223, 13 L.Ed. 667 (U.S.1850).

**26.** For the pertinent terms of 12 O.S.Supp.1993 § 696.2(A) and (B), see *supra* notes 10 and 7.

**27.** Courts must avoid statutory construction that would lead to an absurdity if this can be done without violating legislative intent. *Jackson v. Mercy Health Center, Inc.*, Okl., 864 P.2d 839, 844 (1993); *TXO Production v. Oklahoma Corp.*

*Com'n,* Okl., 829 P.2d 964, 969 (1992); *City of Norman v. Liddell,* Okl., 596 P.2d 879, 882 (1979).

**28.** *Earl v. Tulsa County Dist. Court,* Okl., 606 P.2d 545, 548 (1980); *Wilson v. Foster,* Okl., 595 P.2d 1329, 1333 (1979); *Neumann v. Tax Commission,* Okl., 596 P.2d 530, 532 (1979).

**29.** A judgment issues from the court and not from the attorneys or the court clerk. A trial judge has the duty to draft, sign and record a judgment within a reasonable time after its rendition or pronouncement. *Manning v. State ex rel. Dept. of Public Safety,* Okl., 876 P.2d 667, 672 (1994).

**30.** The pertinent provision of 12 O.S.Supp.1993 § 696.2(B) is:

"[T]he court *shall state* in the ... appealable order *that the matter was taken under advisement.*" [Emphasis added.]

**31.** For a discussion of the elements of this statutory process, see *supra* section II.

procedural pitfalls for the unwary practitioner are omnipresent, we give guidance on what is to be done about the developing pattern of aberrational procedure currently in use for memorializing matters taken under advisement.

A serious aberrational pattern is present when:

(1) The record does *not* show that a *file-stamped copy* of the appealable order was ever mailed by any party but the appealing party's counsel receives actual notice of the prepared memorial, either from other counsel in the case or by participation in the processing of a proposed journal entry;

(2) The prevailing party's counsel prepares a memorial, secures the trial judge's signature and—*without opposing counsel's participation or knowledge*—files the judgment or appealable order but neither counsel nor the court clerk mails a file-stamped copy to opposing counsel; or

(3) The prevailing party's counsel mails to opposing counsel a copy of a judge-signed judgment or order which does not bear a file stamp.

As for the first aberration described, actual participation in the beginning of the process for finalizing the judgment or appealable order would impose on the appealing party the obligation *to monitor* the case filings in the court clerk's office for the appealable event's occurrence. Vigilance will disclose when the critical filing has transpired.

As for the second example, appeal time would be triggered when the losing party acquires *actual* notice of the appealable order's filing. The aberration last described requires that upon receipt of the judge-signed order (*sans* file stamp), the appealing party inquire of the filing's date to ascertain when the appealable event occurred. Appeal time would run from the time counsel actually receives that information.

In enacting 12 O.S.Supp.1993 § 696.2(A) and (B) the Legislature intended (1) that *actual notice* of the appealable event be im-

parted to the appealing party by the court clerk and (2) that the appeal-time clock for nisi prius orders disposing of matters taken under advisement begin to run from the time the copy of the file-stamped original order *is mailed* by that official in substantial compliance with the statutory regime. The guidance offered today is consistent *both* with the expressed legislative intent and with Oklahoma's extant jurisprudence, which holds that the clerk's notice to counsel of the appealable order's entry triggers appeal time.[32]

## VI

## SUMMARY

In derogation of statutorily prescribed criteria[33] that govern orders which memorialize matters taken under advisement, *the parties and the court resorted in this case to an extra-statutory shortcut for the preparation and filing of the order triggering appeal time.* This technique, although not expressly approved, may be forgivable. Oklahoma's courthouse judges are *staffless.* As a practical matter, strict compliance with the recent commands in 12 O.S.Supp.1993 §§ 696.2(B), 990.2(C) and 990A(A) is *beyond the capacity and outside the reach of resources available to the institutions* in which trial judges function.

Counsel who *approve orders* in circumstances which amount to acquiescence in shortcutting legislatively established procedures are charged with the duty of monitoring case filings for the appealable event's occurrence that can be anticipated. When Hughes' counsel approved the February 13 order, she elected to participate in the abbreviated, extra-statutory process (albeit one consistent with old rules of practice) which contravenes the *new* statutory procedure for disposition of matters taken under advisement. But for the application of *Poafpybitty,* Okl., 394 P.2d 515, 520 (1964), and the prospective effect we give to today's pronouncement, she could not escape the consequences of her own act—*that of placing in the pre-*

---

**32.** *McCullough, supra* note 18 at 1334–35.

**33.** *See supra* notes 7 and 10 for the statutory standards governing orders which decide ques-

tions taken under advisement by the district court.

*vailing party's counsel the power (a) to proceed (after her approval of the order's draft), then (b) to present the document for the judge's signature, and ultimately (c) to file it in the clerk's office.*

Today's construction of the provisions of § 696.2(A) and (B) will require that (a) the prevailing party's counsel file the order disposing of the matter taken under advisement *immediately* after securing the trial judge's signature and (b) *the court clerk take charge of mailing* file-stamped copies of the order to the parties as well as of *executing and filing* the statutorily-mandated "certificate of mailing". *The court clerk's mailing to all parties (or their counsel of record), will assure timely notice of the appealable event* and help eliminate the dangers of today's aberrational practices. It will also save § 696.2(A) and (B) from a constitutional cloud by entrusting critical performance to neutral government officials.

The motion to dismiss is accordingly denied *with prejudice to renewal.* This appeal shall proceed to the decisional stage.

ALMA WILSON, C.J., and LAVENDER, SIMMS and HARGRAVE, JJ., concur.

KAUGER, V.C.J., and SUMMERS and WATT, JJ., concur in result; dissent in part.

HODGES, J., dissents.

SUMMERS, Justice, concur in result but dissent in part, with whom KAUGER, Vice Chief Justice, and WATT, Justice, join.

This case offers another chance to construe the statutes by which appellate procedure was reformed effective October 1, 1993. In establishing the time by which appeals must be taken the Legislature has now effectively divided all appealable District Court orders and judgments into two groups: (1) cases where the final decision *was not* taken under advisement by the court, and (2) cases where the final decision *was* taken under advisement. In the first group time runs 30 days from the *date of filing* of the appealable instrument; in the second it runs 30 days from the *date of mailing a file-stamped copy* to the appealing party.

In today's opinion the Court declines to recognize the plain language regarding the second group, saying to do so would be an unconstitutional abdication of judicial authority. The Court then proceeds to fashion its own regime for appeals of matters taken under advisement. I find no constitutional flaw in the Legislature's work, but would simply follow the statute and let this appeal proceed as timely.

Here are the essential facts. Bushert sued Hughes and won at trial. Hughes filed what amounts to a motion for new trial, timely. The judge took the motion under advisement. On February 3rd the judge denied the motion, according to an unsigned court minute which was mailed to the lawyers. Bushert's lawyer prepared a journal entry of judgment, and got Hughes' lawyer to approve it as to form. The journal entry was filed February 16, but included no certificate that a file-stamped copy had been mailed to Hughes' lawyer. On March 20 Hughes' lawyer received from Bushert's lawyer a file-stamped copy of the order. Hughes commenced his appeal April 11, in less than 30 days after he got the order but more than 30 days after it had been filed. Bushert moved to dismiss the appeal as being out of time.

The post-trial motion was timely and tolled the time to appeal from the judgment. 12 O.S.Supp.1994 §§ 653, 990.2; *Brown v. Green Country Softball Association,* 884 P.2d 851 (Okla.1994). An appeal may be brought by filing a petition in error within thirty days of the date of the order disposing the motion for new trial. 12 O.S.Supp.1994 § 990.2(A). The order disposing of the post-trial motion must be in the form required by 12 O.S.Supp. 1994 § 696.3 for the time to commence for filing the appeal. *Brown v. Green Country Softball Association,* 884 P.2d at 853. The journal entry of February 16, 1995 satisfies this criteria, and appeal time would ordinarily begin on that date.

But Hughes points out that the post-trial motion was taken under advisement, and that appeal time should not begin to run until the date the February 16th order was mailed to him. When a matter is taken under advisement and results in an appealable order adjudicated *in absentia* the time to commence

an appeal "shall run from the date of mailing of a file-stamped copy of the judgment, decree or final order to the appealing party, as indicated on the Certificate of Mailing, rather than from the date of filing." 12 O.S.Supp. 1994 § 990.2(C). The Court recognizes that this is what the statute says, but refuses to follow it. The reason the Court gives is that the statute is unconstitutional if it allows a lawyer to "tinker" with the time to commence an appeal by determining when to file the journal entry and certificate of mailing.

A statute must be held to be constitutional unless it is clearly, palpably and plainly inconsistent with the State Constitution. *Taylor v. State & Educ. Employees Group Ins. Program*, 897 P.2d 275, 277 (Okla.1995) In determining whether a statute is consistent with fundamental law the statute is not construed as unconstitutional when a reasonable constitutional construction is available. *Association for Equitable Taxation v. City of Oklahoma City*, 901 P.2d 800, 806 (Okla. 1995); *Unit Petroleum Co. v. Oklahoma Water Resources Bd.*, 898 P.2d 1275, 1277 (Okla. 1995); *Simpson v. Dixon*, 853 P.2d 176, 183 (Okla.1993). I believe a reasonable construction is possible.

The trial court either prepares the judgment or directs a party to prepare the judgment. 12 O.S.Supp.1993 § 696.2. The trial court is given statutory authority over the preparation and time to file the judgment. *Id.* at § 696.2(A). In *Aven v. Reeh*, 878 P.2d 1069 (Okla.1994) we explained that the trial court has discretion in setting the time for the preparation of the appealable journal entry, and where the journal entry was not prepared by the court or the victorious party, application must be made by the appellant to the trial court for relief. *Id.* 878 P.2d at 1071.[1]

A trial judge may not undo an appealable event. *Lucas v. Bishop*, 890 P.2d 411, 412 (Okla.1995). But a trial judge has always had the power to determine when the appealable event would occur in the first instance. For example, in former times when the ap-

pealable event was the pronouncement of the decision the trial judge had control of the docket to determine on what day the decision would be pronounced.

In 1921 this Court explained that a statute could not mandate the time for judicial adjudication of a controversy. *Atchison, T. & S.F.Ry. Co. v. Long*, 122 Okla. 86, 251 P. 486, 489 (1926). See also *Hambright v. City of Cleveland*, 360 P.2d 493, 496 (Okla.1960), where we noted the trial court's inherent power to supervise its docket by controlling the disposition of causes. The Court's opinion today challenges the appellate statutes for their "standardless delegation of power", but the creation of such standards is not within the Legislature's power. *Atchison, T. & S.F.Ry. Co. v. Long, supra.* Only the trial judge exercising sound discretion determines the date for disposing of controversies on the judge's docket.

At one time a journal entry was a "jurisdictional prerequisite" to appellate review. *Johnson v. Johnson*, 674 P.2d 539 (Okla. 1983); *Willitt v. ASG Industries, Inc.*, 572 P.2d 1296 (Okla.1978); 12 O.S.1981 § 32.2. We observed that the victorious party prepares the journal and "The appealing party— nearly always on the other side of the case— has no firm control over the process." *Id.*, 674 P.2d at 542–543. There was an example where the appellant's right to judicial appellate review was within the control of the opposing party.

Did we hold § 32.2 and such practice as unconstitutional because it gave one party the ability to frustrate another's right to appellate review? We did not. We sensibly construed § 32.2 to mean that the appellant could file an application with the trial court to compel the creation of a journal entry for inclusion in the record on appeal. An appellant's right to appellate review was protected by the appellant in the trial court. See *Johnson*, 674 P.2d at 542 n. 5 and Rule 1.24 of the Rules of Appellate Procedure in Civil Cases.

---

1. I would apply § 696.2(A) to controversies where the matter was taken under advisement and one party was directed to prepare the judgment. Section 696.2(A) states that if the journal entry "is not submitted to the court by the party directed to do so within the time prescribed by the court, then any other party may reduce it to writing and submit it to the court."

It was against this history of § 32.2 that § 696.2, § 990.2, and § 990A were enacted. Our construction of § 32.2 in *Johnson* included the observation that "An absurd result would doubtless flow from any other construction." *Id.*, 674 P.2d at 542. We said this, explaining that preparation of the journal entry within thirty days of the decision was often impossible. We adopted one construction of a statute because another created an impossibility. In today's case the Court leaps to the conclusion that the statute is impossible to enforce, with the result that it creates an appellate procedure contrary to statute. I respectfully find no necessity for this construction of the statute.

The failure to prepare or file a journal entry is still within the discretion of the trial court to control *sua sponte*, and to correct upon application of a party. The standards that govern are within the discretion of the trial court. *Atchison, T. & S.F.Ry. Co. v. Long, supra.* **The problem in this case is not that the statutes are unconstitutional, but that the trial court declined to exercise its discretion for determining the time the journal entry was to be filed and mailed.** A trial court has always had the discretion to determine when the appealable event should occur, and §§ 696.2, 990.2, and 990A are constitutional.

The Court's opinion states that a lawyer's act of approving a journal entry prepared by opposing counsel now imposes upon that lawyer the obligation to monitor the docket to determine the date the journal entry is filed. This philosophy is contrary to statements in three of our former opinions. We have explained that the Due Process Clause requires notice to parties that is reasonably calculated to inform them of critical stages of the judicial process. *Matter of Estate of Pope*, 808 P.2d 640, 642 (Okla.1990). Thus, in *AT & T v. Land*, 819 P.2d 716, 718 (Okla.1991) we explained due process requires that "when a matter is taken under advisement, the affected parties who appeared be given timely notice of the court's decision." *Id.*, 819 P.2d at 718. This Court has not explained the exact form the notice must take, but we have stated that a lawyer is not required to monitor a trial court docket for the appealable event.

In *Matter of Estate of Pope*, supra, we said:

Implementing the standards and the spirit of *Mullane* [*v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)] as well as its progeny, this court expressly condemned in *McCullough v. Safeway* "as clearly in discord with the notions of due process, state and federal" the then obtaining notion of duty to monitor the court's docket for appealable events that might occur *in absentia* when the case was under advisement and not regularly set on the docket for pronouncement of the court's decision.

*Matter of Estate of Pope*, 808 P.2d at 644, (emphasis in original and footnote omitted).

This abhorrence of placing a duty upon counsel to monitor the trial court docket was also recognized in *Heiman v. Atlantic Richfield Co.*, 807 P.2d 257 (Okla.1991) where we stated: "There is no duty to monitor the court's docket for appealable events." *Id.*, 807 P.2d at 261. *See McCullough v. Safeway Stores, Inc.*, 626 P.2d 1332, 1334 (Okla.1981)

The Court attempts to distinguish this line of cases by stating that here both counsel were afforded notice of the trial judge's decision before the filing the journal entry. The Court is, without calling it such, applying a theory of constructive notice to when appeal time begins to run. The Court equates knowledge of the preparation of the journal with a circumstance sufficient to put a prudent man upon inquiry as to a particular fact, that fact being the date of filing for the journal entry.[2]

---

**2.** "Notice is either actual or constructive." 25 O.S.1991 § 10. "Actual notice consists in express information of a fact." 25 O.S.1991 § 11. "Constructive notice is notice imputed by the law to a person not having actual notice." 25 O.S. 1991 § 12. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." 25 O.S.1991 § 13. *See Matter of Estate of Pope*, 808 P.2d 640, 646 n. 32 (Okla. 1990).

In *McCullough* the appealable event occurred *in absentia*. That appealable event was rendering the decision, the date the decision was rendered was the date of notice, and the date of notice was equated with the date notice of the decision was mailed. In *McCullough* the lawyers knew that the matter was taken under advisement, and that the appealable event would be forthcoming, but we declined to equate this knowledge with a duty to monitor the docket. 626 P.2d at 1334.

In a case under advisement where the trial court communicates its decision to the lawyers they know that an appealable event will occur at some time in the future. The lawyers know that an appealable order with (hopefully) a certificate of mailing will be filed. But unlike in *McCullough* the Court today uses this knowledge of the likelihood of a future appealable event to impose upon the lawyers a duty to monitor the docket. I cannot agree to impose such a burden on the practicing bar.[3]

The Court's opinion states that in matters taken under advisement the time to appeal in some cases will begin when the order is filed. In other cases the time to appeal will begin when appellant has notice of the order's filing. In still other cases the time to appeal will begin on the date of the Certificate of Mailing when the judge-prepared memorial and Certificate are filed and mailed in accordance with the statutes. These rules will result in considerable judicial energy being consumed on appeal to explain why some particular appeals are untimely, and others not.

No "Certificate of Mailing" was filed in this case. I do not consider that fatal to the appealability of the order. The statutes on this matter do not have identical language. Section 990.2(C) states that if an appealable order is taken under advisement the time to appeal runs from the date of mailing indicated on a Certificate of Mailing. Section 990A(A) states that if the appealable order

states that it was taken under advisement the time to appeal runs from the date of mailing on the Certificate of Mailing. In § 990.2 the appealable order must be taken under advisement to extend the time to appeal. But in 990A(A) the appealable order must state on its face that the matter was taken under advisement to extend the time to appeal.

Section 696.2(B) states that in a matter under advisement the appealable order must state that the matter was taken under advisement. The order of February 16, 1995 does not state that it was taken under advisement, but the trial court record shows that the post-trial matter was in fact taken under advisement. The order does not comply with § 696.2(B).

A strict standard of compliance is not always applied to a jurisdictional statute. *Graff v. Kelly*, 814 P.2d 489, 495 (Okla.1991). I construe these statutes to mean that the date of mailing begins the time to appeal, but that substantial compliance with the requirement of a Certificate of Mailing will allow the date of mailing to be shown by other means when no Certificate of Mailing was filed. I would thus start appellant's time to appeal in a case under advisement when a filed-stamped copy of the journal entry is mailed to the appellant. In this case the appellant provided proof that the appealable order was mailed on March 16, 1995. I would thus hold the appeal to be timely. I concur in the Court's result not to dismiss this appeal, but dissent from the Court's rationale.

---

3. This Court could tell judges that they should impose a time limit on counsel for the preparation and submission of appealable orders. It could tell them that they should require lawyers to prepare and file the Certificate of Mailing with the approved journal entry, and that the order must include a statement that the matter was taken under advisement. We could also tell them that even when a matter is not taken under advisement a time limit for the preparation and submission of the journal entry should be set.