TURNER v. STATE ELECTION BOARD (TURNER, Intervener).

No. 32617.   May 22, 1946.

*169 P. 2d 285.*

Shapard & Wallace, of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for respondents.

Robinson, Shipp & Robertson, of Oklahoma City, for intervener, Roy J. Turner.

PER CURIAM. This is an original proceeding filed in this court by John Bunyan Turner seeking a writ of mandamus to require the State Election Board to place his name on the Democratic ballot in the coming primary election as a candidate for Governor.

From the pleadings and oral arguments it appears without serious contradiction that petitioner, on April 22, 1946, filed his notification and declaration of candidacy for Governor with the State Election Board; that on April 27, 1946, Roy J. Turner, who had there-

tofore and prior to the filing by petitioner filed as a candidate for the same office, filed a protest petition praying that the name of John Bunyan Turner be stricken from the ballot; that on May 1, 1946, Edward M. Box and others filed a protest petition praying that the name of John Bunyan Turner be stricken from the ballot; that on May 14, 1946, the State Election Board convened and called up for hearing the two protest petitions above specified, the protest petition of Roy J. Turner being first called; that when the protest petition of Roy J. Turner was called, petitioner, John Bunyan Turner, as required by law, deposited with the Election Board the sum of $250; that thereupon the petition of Edward M. Box and others was called and the Election Board required an additional deposit of $250 by petitioner, which petitioner refused to make; that petitioner was advised by the Election Board that unless he made such deposit he could not be heard to resist the protest petition of Edward M. Box and others, and that his name would be stricken from the ballot on the protest petition filed by Box. Petitioner thereupon demanded the return of the $250 which he had theretofore deposited in the Roy J. Turner protest, which was by the Election Board denied. In petitioner's brief appears the following:

"Petitioner, on being so ordered that the board would strike his name from the ballot, requested a return of his money, and on refusal, he withdrew."

Petitioner then absented himself from the place of hearing, retiring from the room without indicating whether he would or would not return, returned to his home in a distant part of the state, and apparently abandoned any effort to gain a hearing on the merits of either of the protests before the Election Board. He did not request that the board enter of record the formal order denying him the right to appear and defend said protests; in fact, no such formal or written order appears of record. The State Election Board, after his withdrawal, and after he had absented himself from the hearing, after calling him to appear, proceeded to publicly hear both of said protests on the merits, hearing several witnesses thereon, sustained the same and struck petitioner's name from the ballot, finding that his attempted filing was frivolous, not made in good faith, and was made for the purpose of confusing the voters, and without compliance with 26 O.S. 1941 § 162c. On May 18th he filed in this court his petition for writ of mandamus to compel the Election Board to grant him a hearing on the merits of the protests.

Roy J. Turner has filed in this proceeding a petition in intervention in which he asserts the legality and validity of the action of the State Election Board.

Petitioner contends that the Election Board erroneously construed section 1, chapter 5b, Title 26, Session Laws 1943, p. 91, resulting in arbitrarily denying him a clear legal right to be heard on the merits of said protests. That section provides that if the legality or regularity of a notification and declaration is challenged or objected to on any ground, said objection shall be set forth in a written petition which shall be set for hearing before the Election Board and notice of the date and place of such hearing served upon the candidate against whom the objections are filed. Such petition may be heard without formal pleadings in answer or reply thereto, and the Election Board may summon witnesses and compel their attendance and the production of evidence in a proper case. It further provides that at the time of filing a petition objecting to the candidacy of any cadidate, the petitioners shall deposit with the State Election Board a cash deposit of $250 to defray the expense of the hearing; that should the candidate whose notification and declaration is challenged desire to appear in answer to the challenge or petition in

objection, he shall be required, at the time of filing an answer or making his appearance, to make a cash deposit with the Secretary of the Election Board in the same amount as required of the protestant, and that if the protestant is successful at such hearing, his deposit shall be returned to him and the expenses of such hearing paid by the deposit made by the contestee.

The statute contemplates there may be one or more protests, and that a deposit for costs should be made by each person filing a petition of protest, and that upon hearing thereon the various grounds contained in the protest petitions filed shall be heard and determined, at which time the candidate shall make his deposit of $250 in order to defend his candidacy against the protestants. It does not provide for a separate deposit to be made by the candidate for each protest petition so filed against him. It is obvious that under the procedure followed by the State Election Board in this case numerous protests or challenges to the candidacy of a candidate, for each of which he would be required to make a deposit of $250 before he could be heard in opposition thereto, might impose such a financial burden upon a candidate as to force his withdrawal or default at such hearing, thus defeating the purpose of the law to permit any citizen to assert in good faith his right to be a candidate for state office. So used, it would in fact deny such candidate a hearing upon objections to his candidacy to which he would be entitled.

The law is not wholly clear as to the duty of the State Election Board in requiring a deposit when more than one protest is filed against a candidate, and unquestionably the Election Board, in its construction thereof, acted in entire good faith in an endeavor to carry out the correct procedure under its provisions, but such construction, as we have pointed out above, might result in great abuse and in the denial of the plain legal right of a candidate. We do not think the Legislature intended the results which might lead from such construction. No appeal is provided by the statute from the action of the Election Board, and if petitioner had rested his rights solely upon the action of the board in requiring the additional deposit as a condition precedent to hearing the protest against his candidacy, we think the action of the Election Board, even though accompanied by good faith, would have amounted to an arbitrary denial of the clear legal right of petitioner to appear before the board and have a hearing on the merits of said protest.

But petitioner did not stand on said rights. He not only did not require this administrative body to enter its order of record denying him the right to be heard, but it appears from the record and oral arguments herein that he acquiesced in the action of the board by his withdrawal and absenting himself from further proceedings connected with said protest, by his demand for the return of the deposit which he had theretofore made in the Roy J. Turner protest, and by his return to his home in a distant part of the state, evincing his intention wholly to abandon the contest hearing and his candidacy. It thus appears that if the action of the board in this respect was erroneous, he cannot now be permitted to reverse his actions and predicate his right to relief upon the actions of the Election Board in which he has by his acts and conduct acquiesced.

Mandamus is an extraordinary writ granted only when the petitioner has a clear legal right. Petitioner has not shown such right. It therefore follows that he is not entitled to the writ of mandamus.

Writ denied.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, WELCH, CORN, DAVISON, and ARNOLD, JJ., concur. **RILEY, J., concurs in result.**

RILEY, J. (concurring specially). For the reason that petitioner does not establish a clear legal right to the writ, it is believed the issuance of it should be denied.

The order of the State Election Board struck from the files petitioner's notification and declaration of candidacy for Governor. The reason justifying the order was lack of good faith in petitioner's candidacy for Democratic nomination to the office.

Petitioner's surname is that of Turner; it is the same as that of Roy J. Turner, who is also a candidate for the same nomination and election at the same time, to the same office. The name is spelled the same; it sounds the same; and it is the same. Honorable John B. Turner made a famous name in the judicial annals of jurisprudence in the Southwest. He was a member of this court.

The public policy in Oklahoma, as evidenced by constitutional provision and statute, amongst other things, is one to preserve the purity of the ballot and to prevent and punish fraud in elections. The safety of the people is the supreme law—le salut du peuple, est la supreme loi.

Duplication in the filing of names of a candidate for nomination and election to a public office, and the use of names famous, is avoided under the public policy, by statute, Title 26, S.L. 1943, ch. 5, p. 87, sub. b, and by virtue of said statute the burden placed upon the person possessed of a similar name to that of another candidate, or of a famous person, in the field, is to show good faith. There is a time and place for all things.

No person, including petitioner, challenged the notification and declaration of Roy J. Turner to be a candidate for the Democratic nomination and election to the office under consideration at the ensuing election. A presumption obtains to safeguard his right to run and be elected without fraud or interference.

No such presumption can be indulged to safeguard petitioner's right or privilege of candidacy for the public office, irrespective of his previous reputation, intelligence, or good morals. He is a fraud and everybody knows it, or, by the exercise of good judgment should know it. Judges cannot be blind to that which everybody knows.

The candidacy of John Bunyan Turner, the petitioner, not only deters the other candidate of the same name in the exercise of his right, but it reflects upon all candidates for the Democratic nomination and election to the office of Governor, and it reflects upon the State of Oklahoma as well as upon this court.

Petitioner did not avail himself of the procedure provided by law to prove his good faith. The administrative process required of him that he enter a proceeding before the State Election Board 15 days "prior to the opening of the filing period for such office," which was long before he filed his notification and declaration, so that the matter of similarity of names involved and occasioned by the duplication of his notification and declaration could have been tried out in due time and petitioner's good faith, if any, could have thereby been established. He is now in default. If the petitioner was not in default before the board at the time his name was stricken from the ballot, he was in default in failing to show, in the manner provided, his good faith.

This court may not properly extend to the State Election Board power and authority to forego the defaults of petitioner, and particularly his failure to file the pre-filing proceedings before the board at the time stated in the statute. That time has long since elapsed and the Election Board, as an instrument of administration in government and in the exercise of the particular function, having discharged its

duty, power, and authority, became, was, and is functus officio. That ended the matter.

The error of the board in not consolidating the contests and in requiring more than one deposit of $250 is wholly immaterial. It was an intermediate error, if at all, not decisive or determinative of the merits of the final order by the board entered striking the name of John Bunyan Turner from the ballot. De minimis non curat lex—the law takes no account of trifles.

If the writ is not to be denied as a matter of law, for failure of petitioner to show a clear legal right to the writ, and in that event consideration is to be given to the construction of a statute applicable to real candidates acting in good faith in a moot case as this, this court should also construe and apply the applicable statute in the equitable consideration and in the exercise of its original jurisdiction extending to a superintending control over all inferior courts, commissions, and *boards* created by law and should afford complete relief to all parties involved.

The highest of mandates of the law, the Constitution, sec. 7, art. 3, provides: "The election shall be free and equal."

The truth of the matter is that consideration in equity of the subsequent error of the board, if any, and equitable consideration in the denial of the prerogative writ of mandamus and the ignorance of petitioner as to administrative proceedings and indulgence of the fraud of duplicate names by any agency intended to safeguard the purity of election and prevent fraud, but intended by those who file them to confuse the qualified electors of an enlightened state and to defeat the purpose of an election, is ridiculous.

The writ should be promptly denied upon construction, not by way of dictum as to the statute applicable to a real candidate in good faith, but as to Title 26, ch. 5, S.L. 1943, S.B. 118, p.

87. That act, by title, states the public policy as to famous and duplicate name filing of pseudo candidates and prescribes procedure as a condition precedent to placing a similar name on the ballot when the possessor of it acts in good faith.

Section 1 of the act prescribes a prefiling period of time for hearing before the board, and requires compliance. John Bunyan Turner, for his failure to comply, is entitled to no hearing whatever at the time the order was made, as a matter of law. He has no right in the premises, fair or unfair, with an attorney or without, before the board, or before any other agency of the people's government. He and those who act for him in equity may take the issue to the people who have the discretion to amend or change the law as to the time of hearing as now provided by law, and as to the matter of change of the law intended to avoid similar names of candidates for office in Oklahoma and similar names to characters of history. *Nullis commandum sopere protest de injuria sua propia.* He who sticks at the letter sticks in the bark, i.e., does not get at the solid substance of the law. I find no necessity of a construction of the statute to which the unnamed per curiam opinion devotes a construction. When a real issue and a real candidate appears in court, that statute may receive an additional construction and one at variance with the per curiam opinion.