LARRY JONES INTERNATIONAL MIN-
ISTRIES, INC., an Oklahoma Corpora-
tion, d/b/a Feed The Children, Appellant,

v.

Mike MEANS, in his Official Capacity as
Oklahoma County Assessor, and the
Oklahoma County Board of Equaliza-
tion, Appellees.

No. 88293.

Supreme Court of Oklahoma.

Oct. 14, 1997.

George W. Velotta, II, Donald B. Nevard, of Derryberry, Quigley, Solomon, Blankenship & Naifeh, Oklahoma City, for Appellant.

Robert H. Macy, District Attorney, Gretchen Crawford, Assistant District Attorney, Oklahoma City, for Appellees.

SUMMERS, Vice Chief Justice.

¶1 First the County Assessor, and then the County Board of Equalization, decided that a tract of land, with its building, owned by a charitable corporation should be assessed for ad valorem taxes. A statute gives the owner ten days to appeal the Board's decision to the District Court. The District Court concluded the owner's appeal was out of time, and the Court of Civil Appeals, by a 2 to 1 decision, affirmed the lower court's dismissal. The only question before us now is the timeliness of the appeal to District Court: When does the ten days start to run? We conclude the appeal was timely, and that it may proceed in the District Court.

¶2 The Oklahoma County Assessor notified Larry Jones International Ministries, Inc. d/b/a Feed The Children (hereafter FTC) that certain real property owned by FTC would be assessed for taxes. FTC filed a protest with the Oklahoma County Board of Equalization, and claimed that the property was exempt from taxation because it was owned and used by a religiously based, charitable, non-profit corporation approved as exempt by the Internal Revenue Service. The County Board of Equalization heard the protest on May 31, 1996. On Tuesday, June 4, 1996, FTC received a "Notice of Formal Appeal Decision" denying FTC's protest. The Notice was dated June 3, 1996, but stated that a decision had been reached by the Board on May 31, 1996.

¶3 FTC filed its appeal in the District Court on June 13, 1996. The Assessor filed a motion to dismiss,[1] and argued that FTC's appeal was untimely because it was filed more than ten days after the Board's decision on May 31, 1996. FTC's counsel filed an affidavit stating that he attended the Board's meeting on May 31, 1997, presented the protest of the assessment, and said "No action, adjudication or decision was rendered, nor was any such decision or resolution communicated to me or my client-representative present at the hearing at the conclusion of the Board meeting." A similar affidavit was filed by a representative of FTC who was also present at the meeting. Thus, when counsel received the notice of the decision dated June 3, 1996 he treated that date as the date the Board denied the protest.

¶4 The Assessor in response pointed out that the body of the Notice states that the Board met on May 31, 1996 to hear the protest, that the protest was denied, and that this denial was "Approved by the Oklahoma County Board of Equalization on 5–31–96." The Assessor filed an affidavit of an employee of the County Clerk's office stating that on June 3, 1996, she prepared the notice of the denial of the protest, and that on May 31, 1996, the Board "made their last decisions for the 1996 tax year." Thus, Assessor argues that the denial of the protest and adjournment of the Board occurred on May 31, 1996.

¶5 Both the taxpayer and Assessor may appeal from an order of a County Board of Equalization. 68 O.S.1991 § 2880.1(A). The time to appeal is also provided by § 2880.1, which provides in part.

*Notice of appeal shall be filed with the county clerk as secretary of the county board of equalization, which appeal shall be filed in the district court within ten days after the final adjournment of the board.* It shall be the duty of the county clerk to preserve all complaints and to make a record of all orders of the board and both the complaint and orders shall be a part of the record in any case appealed to the district court from the county board of equalization.

68 O.S.1991 § 2880.1(B), (emphasis added).

¶6 Assessor states that a County Board of Equalization is statutorily prohibited by 68 O.S.1991 § 2863(A) from meeting after May 31 for the purpose of adjusting

---

1. This appeal is before us by way of the accelerated procedure for summary judgments and certain dismissals. See Okla.Sup.Ct.R. 1.36.

and correcting assessments. He further argues that the notice states that the decision was made on May 31, 1996, and argues that such is the statutorily allowed last day for hearing the protest. Thus, the Assessor combines the statement on the notice with § 2863 for arguing that the final adjournment date was in fact on May 31, 1996. However, Assessor does not contradict the affidavits of counsel for FTC and its representative.

¶ 7 Assessor's construction of § 2863 is that the Board's denial of the protest cannot be construed as having occurred after May 31, 1996. He says this is so because that statute states that the session of a County Equalization Board shall end not later than May 31st. This argument was expressly rejected in *Castro v. Keyes,* 1992 OK 92, 836 P.2d 1275, where we construed § 2863 in its former codification at 68 O.S.Supp.1985 § 2459. *Id.* 836 P.2d at 1276 n. 3. We said that "The principal issue is whether the County Board of Equalization may hear a protest beyond the statutory deadline." *Id.* 836 P.2d at 1277. We went on to say "Today we hold that a County Board of Equalization possesses authority to adjudicate a timely filed taxpayer protest even though the decision of the Board occurs after the statutory date for adjournment." *Id.* 836 P.2d at 1276. We reaffirmed this holding in *George L. Verity Management · Development Corp. v. Keyes,* 1992 OK 93, 836 P.2d 1279, 1281, and *Oklahoma City Golf and Country Club v. Keyes,* 1992 OK 94, 836 P.2d 1282. Additionally, § 2863 states that when the board does not complete its hearing and adjudication of protests on or before May 31st "a special session may be called, for such time as is necessary to complete consideration of said protests...." 68 O.S.1991 § 2863(A).

▆ ¶ 8 Does Feed The Children have an argument based upon the Due Process Clause here? It does. In *Champlin v. Oklahoma Tax Commission,* 163 Okla. 185, 20 P.2d 904 (1933) the Court said:

The law books are full of authorities to the effect that tax boards as boards of tax review or of equalization in making or reviewing assessments of taxes, act in a quasi judicial capacity. In fact, the reme-

dy by appeal presupposes the exercise of quasi judicial functions by the boards from which appeals are permitted.

*Id.* 20 P.2d at 906.

Thus, the Oklahoma County Board of Equalization acted in a quasi-judicial capacity when it denied the FTC's ad valorem tax protest.

▆ ¶ 9 The constitutional guaranty of due process of law applies to administrative as well as judicial proceedings where such proceedings are quasi-judicial in nature. *Wolfenbarger v. Hennessee,* 1974 OK 38, 520 P.2d 809, 811–812. We have said that "It is the Supreme Court's constitutional responsibility to ensure that the statutory regime governing the filing of appealable orders is implemented as a workable system which evenhandedly extends to all litigants the opportunity for timely notice that is consistent with state's standards of due process." *Joiner v. Brown,* 1996 OK 112, ¶ 6, 925 P.2d 888, 889. Timely notice of the appealable event is the *sine qua non* for laws governing the time to appeal in order to comply with Due Process. *McCullough v. Safeway Stores, Inc.,* 1981 OK 38, 626 P.2d 1332, 1334. Thus, just as in appeals from district courts, timely notice of the appealable event in a tax protest must be given to the taxpayer.

▆ ¶ 10 In *Castro v. Keyes, supra, George L. Verity Management Development Corp. v. Keyes, supra,* and *Oklahoma City Golf and Country Club v. Keyes, supra,* we recognized that a board of equalization could meet and decide a protest after the statutory adjournment date set in § 2863. Thus a statutory adjournment date imparts no notice of a decision on a protest. In other words, and from the view of a taxpayer, when an equalization board does not announce a decision on a meeting held May 31st the taxpayer knows only that the decision might be made at some other time subsequent to the statutory deadline. The passing of May 31st, by itself, conveys no notice that a tax protest has been granted or denied.

¶ 11 The affidavit provided by the Assessor attempts to show that May 31, 1996, was the final adjournment date because the Board made its last decisions on that date and no further sessions were called. But as

notice to taxpayers this method is fundamentally flawed. A taxpayer has no notice that such decisions are indeed the last ones of the Board until the Board gives notice of actually having made them. Further, a taxpayer has no notice that additional sessions are not being called pursuant to *Castro v. Keyes, supra,* or § 2863(A).

¶ 12 Generally, we have said that litigants need not monitor the public records to determine the time to commence an appeal from an individual proceeding when the appealable event occurs in the absence of the appellant. *McCullough v. Safeway Stores, Inc.,* 1981 OK 38, 626 P.2d 1332, 1334. *Cf. Matter of Estate of Pope,* 1990 OK 125, 808 P.2d 640, 644–645 (Court noted both *Safeway,* and the Legislature's removal of the requirement that landowner monitor the court docket for the filing of the commissioners' report in a condemnation proceeding). We have held that a party has a duty to monitor the docket for the appealable event when that party has actual notice of the appealable event or participates in creating it. *Bushert v. Hughes,* 1996 OK 21, 912 P.2d 334, 340. But nothing in the record here shows that FTC either participated in approving the memorial of the decision (as in *Bushert* ), or had actual knowledge of the fact that May 31, 1996 was the final adjournment of the Board.

■ ¶ 13 We hold that when the Equalization Board has concluded its last session to hear protests on or before May 31st, and notice of a decision on a taxpayer's protest is first given to the taxpayer after May 31st, the ten-day period to commence an appeal to the District Court begins to run on the date the notice of the Board's decision is mailed or delivered to the taxpayer.

¶ 14 In *McCullough v. Safeway Stores, Inc., supra,* we determined that the date of mailing would suffice to commence the time to appeal when the appellant had thirty days from the date of mailing to file the appeal. We adopt the same rule here. Although in this case the statute allows for only a ten-day window for filing the appeal, FTC did file its appeal within ten days from the date of mailing.

¶ 15 We conclude that the lower court erred in granting the motion to dismiss, and

reverse the judgment of the District Court. The opinion of the Court of Appeals is vacated, and the cause is remanded to the District Court to proceed with the appeal as to the property's exempt or non-exempt tax status.

¶ 16 KAUGER, C.J., HODGES, LAVENDER, HARGRAVE, OPALA, ALMA WILSON, WATT, JJ., concur.

¶ 17 SIMMS, J., dissents.