OSCN Found Document:OCPA IMPACT, INC. v. SHEEHAN

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 OCPA IMPACT, INC. v. SHEEHAN
2016 OK 84
Case Number: 115108
Decided: 07/18/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 84, __ P.3d __

 

OCPA IMPACT, INC., and DAVID BOND, Petitioners,
v.
SHAWN SHEEHAN, LINDA REID, and MELVIN MORAN, Respondents.

ORIGINAL PROCEEDING TO DETERMINE THE SUFFICIENCY OF THE
GIST AND BALLOT TITLE OF INITIATIVE PETITION NO. 403, 
STATE QUESTION NO. 779

¶0 The Petitioners filed an original proceeding to challenge the gist of the measure post-circulation and the sufficiency of the Attorney General's rewritten ballot title. We hold the time for challenging the gist of a measure has expired and we find the Attorney General's rewritten ballot title to be deficient. We hereby amend the ballot title pursuant to Title 34 O.S. Supp. 2015, § 10.

APPLICATION TO ASSUME ORIGINAL JURISDICTION IS GRANTED;
CHALLENGE OF THE GIST IS UNTIMELY; BALLOT TITLE DECLARED
DEFICIENT AND IS HEREBY AMENDED BY THIS COURT PURSUANT TO
TITLE 34 O.S. SUPP. 2015, § 10.

Robert G. McCampbell, and Travis V. Jett, Fellers Snider, P.C., Oklahoma City, Oklahoma, for Petitioners.
D. Kent Meyers, Melanie Wilson Rughani, Paige A. Masters, Crowe & Dunlevy, Oklahoma City, Oklahoma, for Respondents.
Patrick R. Wyrick, Solicitor General, and Mithun S. Mansinghani, Deputy Solicitor General, Office of the Attorney General, Oklahoma City, Oklahoma, for Attorney General.

COMBS, V.C.J.:

FACTS AND PROCEDURAL HISTORY

¶1 On October 21, 2015, Respondents/Proponents Shawn Sheehan, Linda Reid, and Melvin Moran (Respondents) filed Initiative Petition No. 403 (State Question No. 779), with the Oklahoma Secretary of State. The petition seeks to amend the Oklahoma Constitution by adding a new Article 13-C. The proposed article creates the Oklahoma Education Improvement Fund, designed to provide for the improvement of public education in Oklahoma through an additional one-cent sales and use tax. Funds generated by the one-cent tax would be distributed to public school districts, higher education institutions, career and technology centers, and early childhood education providers for certain educational purposes outlined in the proposed article. Additionally, a percentage of the funds would be used to provide a $5,000.00 pay raise to all public school teachers. The proposed article delegates oversight and auditing responsibilities to the State Board of Equalization and requires monies allocated from the Fund to be used by the Legislature to enhance and not supplant current public education appropriations. The Respondents' proposed ballot title reads as follows:

This measure adds a new Article to the Oklahoma Constitution. The new article creates a limited purpose fund to improve public education. It levies a one cent sales and use tax to provide revenue for the fund. It allocates funds for specific institutions and purposes related to the improvement of public education, such as increasing teacher salaries, addressing teacher shortages, programs to improve reading in early grades, to increase high school graduation rates, college and career readiness, and college affordability, improving higher education and career technology education, and increasing access to voluntary early learning opportunities for low-income and at-risk children. It requires an annual audit of school districts' use of monies from the fund. It prohibits school districts' use of these funds for administrative salaries. It provides for an increase in teacher salaries. It requires that monies from the fund not supplant or replace other education funding. The Article takes effects [sic] on the July 1 after its passage.

Initiative Petition No. 403, Proposed Ballot Title.

¶2 On November 12, 2015, Petitioners OCPA, Inc. and David Bond (Petitioners) filed an Application to Assume Original Jurisdiction in this Court. They raised a single constitutional challenge to the initiative measure, arguing the petition is unconstitutional because it violates the one general subject rule of Art. 24, § 1 of the Oklahoma Constitution. After hearing arguments from the parties and upon consideration, this Court assumed original jurisdiction and held on January 12, 2016, the Initiative Petition No. 403 embraces one general subject and did not violate Art. 24, § 1 of the Oklahoma Constitution. In re Initiative Petition No. 403, State Question No. 779, 2016 OK 1, 367 P.3d 472. We determined Initiative Petition No. 403 is legally sufficient to submit to the voters of this state, and the proponents of the petition may proceed with the remaining statutory requirements. We also noted, the Petitioners did not challenge the gist of the measure in that proceeding. In re Initiative Petition No. 403, State Question No. 779, 2016 OK 1 at ¶2, n.2.

¶3 Pursuant to 34 O.S. Supp. 2015, § 8, the Secretary of State thereafter set the signature gathering period to begin February 16, 2016, and end at 5:00 p.m. May 16, 2016. The signature requirement at that time was 123,725. The Respondents completed the signature process timely and on April 21, 2016, the Secretary of State notified the Respondents it had received the boxes of pamphlets[1] and set the counting process to begin on April 25, 2016. On April 22, 2016, the Secretary of State, pursuant to 34 O.S. Supp. 2015, § 9 (D), submitted the Respondents' proposed ballot title to the Attorney General. On April 29, 2016, the Attorney General, pursuant to 34 O.S. Supp. 2015, § 9 (D) (1) concluded the proposed ballot title did not comply with applicable laws for the following reasons:

l. It fails to explain that the one cent sales and use tax contemplated by the measure will be in addition to the state sales and use tax already levied by the Oklahoma Sales and Use Tax Codes.

2. It suggests that allocated funds will, in part, be used to improve college affordability, when the measure indicates that the funds may be used for college affordability or for otherwise improving higher education. That is, funds may be allocated in whole, in part, or not at all for college affordability.

3. It fails to explain that the increase in teacher salaries as funded by Section 3(A) (l) (b), and as requited by Section 4 of the new Article, requires that teacher salaries be raised by at least $5,000 more than the salaries paid in the year prior to adoption.

4. And, finally, it inaccurately states that it prohibits school districts' use of funds for increasing administrative salaries, when the measure is more limited in that it only prohibits an increase in superintendents' salaries and the addition of superintendent positions.

The Attorney General also submitted his own preliminary ballot title which reads as follows:

This measure adds a new Article to the Oklahoma Constitution. The new Article creates a limited purpose fund to improve public education. To provide revenue for the fund, the state sales and use tax are increased by one cent. It allocates funds for purposes related to the improvement of public education, such as increasing teacher salaries, addressing teacher shortages, programs to improve reading in early grades, increasing high school graduation rates, and college and career readiness. It also allocates funds for improving higher education, improving career and technology education, and increasing access to voluntary early learning opportunities for low income and at-risk children. It requires that the teacher salary increases funded by this measure raise teacher salaries by at least $5,000 over the salaries paid in the year prior to adoption of this measure. It requires an annual audit of school districts' use of monies from the fund. It prohibits school districts' use of these funds for increasing superintendents' salaries or adding superintendent positions. It requires that monies from the fund not supplant or replace other educational funding. The Article takes effect on the July 1 after its passage.

¶4 On May 10, 2016, the Secretary of State, pursuant to 34 O.S. Supp. 2015, § 8 (H), certified the signature count and votes cast for the state office receiving the highest number of votes at the last general election to this Court.[2] On June 1, 2016, this Court determined the signatures on the petition appeared to be numerically sufficient. In re Initiative Petition No. 403, State Question No. 779, 2016 OK 59, ¶2, __P.3d__. It was further ordered that pursuant to 34 O.S. Supp. 2015, § 8 (I), the Secretary of State was to publish notification of the filing of Initiative Petition No. 403, State Question No. 779, and the apparent numerical sufficiency of the signatures. In re Initiative Petition No. 403, State Question No. 779, 2016 OK 59 at ¶3. In addition, the Secretary of State was ordered to publish the Attorney General's rewritten ballot title. Id. The notice by publication also informed the public that any citizen or citizens may file an objection only relating to the signature count made by the Secretary of State or the preliminary ballot title as rewritten by the Attorney General.[3] On June 23, 2016, Petitioners filed an Application to Assume Original Jurisdiction with this Court to object to both the gist of the measure and the rewritten ballot title.

ANALYSIS

I. Post-Circulation Challenge To The Gist Of The Measure.

¶5 Petitioners first challenge the sufficiency of the gist of the measure found in the pamphlets already circulated for signatures. They argue it is appropriate for this Court to review the gist post-circulation. We hold that under current law, a post-circulation challenge to the gist of a measure is untimely.

¶6 Petitioners first cite our recent opinion wherein we found that a pre-circulation challenge to the gist of a measure is appropriate. In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ¶4, n.10, __P.3d__. We noted that although the ballot title review process and challenge must now statutorily come after the circulation period pursuant to 34 O.S. Supp. 2015, § 8, the statute remains silent as to a challenge to the gist of the petition. In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51 at ¶4, n.10. However, we determined we need not decide in that opinion whether a post-circulation challenge to the gist of the petition was appropriate. Id. That is the question we are presented with today.

¶7 It first should be noted that in all the Initiative and Referendum statutes (34 O.S. § 1-27) the word "gist" only appears in one place, 34 O.S. 2011, § 3. It only provides that the gist of the measure shall be on the signature sheets which are then attached to copies of the petition for "the securing of signatures." It specifically identifies the signature sheets as being separate from the petition. It refers to the combination of the petition and signature sheets as a "pamphlet" which is what the proponents circulate for signatures. After filing the petition with the Secretary of State pursuant to Title 34 O.S. § 8, citizens are notified they may object to the constitutionality of the petition. However, there is no provision at the pre-circulation stage about filing the gist or a signature sheet with the gist. Nor is there a specific provision anywhere in these statutes for challenging the gist. Title 34 O.S. Supp. 2015, § 8 (B) provides, at the pre-circulation stage, for only a protest concerning "the constitutionality of the petition."[4]

¶8 In In re Initiative Petition No. 409, State Question No. 785, we determined even though the statutes were silent concerning a challenge to the gist, at least at the pre-circulation stage, it could be challenged because it remains a necessary part of the pamphlet circulated to potential signatories. 2016 OK 51 at ¶4, n.10. A challenge to the gist has historically involved its sufficiency. Here, Petitioners challenge the sufficiency of the gist. In 2009, the legislature amended 34 O.S. § 8 by adding a new subsection (B) which provides in pertinent part "[n]o objection to the sufficiency shall be considered unless it has been made and filed as herein provided, i.e., "within ten (10) business days after publication" [the original publication by the Secretary of State concerning the filing of the petition] (34 O.S. Supp. 2015, § 8 (B)). 2009 Okla. Sess. Laws c. 318, § 1. Under current law, the sufficiency of the petition and, by our interpretation as mentioned, the gist, is appropriate only within the time period for filing an objection to the petition (34 O.S. Supp. 2015, § 8 (B)). The ten-day period for filing such objection already expired prior to circulation. This matter is at the post-circulation stage. The only objections authorized at this stage are found in 34 O.S. Supp. 2015, § 8 (I). In 2009, the Legislature amended this subsection, which at the time was subsection (H), to restrict the content of post-circulation objections. 2009 Okla. Sess. Laws c. 318, § 1. Following the 2015 amendments, post-circulation objections must now "relate only to the validity or number of the signatures or a challenge to the ballot title." 2015 Okla. Sess. Laws c. 193, § 4. This is further proof that the Legislature intended the sufficiency of the petition and/or gist to be unchallengeable post-circulation. Petitioners argue that a misleading gist would be relevant to the "validity" of the signatures. We do not agree. The validity of the signatures concerns only the genuineness of the signatures and does not concern whether a person signing the signature sheet was misled by the gist thereon. That issue is inherently a sufficiency argument that, at the post-circulation stage, has expired.[5]

II. Ballot Title Challenge.

¶9 In addition to the gist of the measure, the Petitioners challenge the sufficiency of the rewritten ballot title. The ballot title must reflect the character and purpose of the measure and not be deceptive or misleading. In re Initiative Petition No. 360, State Question No. 662, 1994 OK 97, ¶25, 879 P.2d 810. The test is whether it is written so that voters are afforded an opportunity to fairly express their will and whether it apprises voters with substantial accuracy what they are asked to approve. In re Initiative Petition No. 360, State Question No. 662, 1994 OK 97 at ¶25. The ballot title shall also not reflect partiality in its composition or contain any argument for or against the measure. Title 34 O.S. Supp. 2015, § 9 (B) (4). After the 2015 amendments to 34 O.S. § 8, a challenge to the ballot title is now only appropriate post-circulation. 2015 Okla. Sess. Laws c. 193, § 4. As mentioned, circulation of the petition has already occurred. The Petitioners have therefore properly presented their challenge to the rewritten ballot title.

¶10 The Petitioners assert five errors in the rewritten ballot title: 1) the ballot title ignores the Board of Equalization's new power to prevent the Legislature from appropriating funds, 2) the ballot title's statement that sales and use tax will be increased by "one cent" is misleading and is inconsistent with the text of the Petition, 3) the ballot title fails to explain the effect of the proposition by omitting how the tax increase will be apportioned among governmental entities, 4) the ballot title's reference to "improving" public education expresses partiality and is an argument for the measure, and 5) the ballot title is misleading because it fails to explain the audit requirement and salary restrictions for revenue generated by the tax (they base this argument on the fact the proposed Article does not provide auditing requirements for higher education, career and technology education and the State Department of Education and the ballot title does not reflect this fact). The Petitioners propose the following amendments to the rewritten ballot title (underlined text represents added language and strike-through text represents deletions):

This measure adds a new Article to the Oklahoma Constitution. The new Article creates a limited purpose fund to improve increase funding for public education. To provide revenue for the fund, the state It increases sales and use tax taxes are increased by one cent percent to provide revenue for the fund. It allocates funds for purposes related to the improvement of public education, such as increasing teacher salaries, addressing teacher shortages, programs to improve reading in early grades, increasing high school graduation rates, and college and career readiness. It also allocates funds for improving higher education, improving career and technology education, and increasing access to voluntary early learning opportunities for low income and at-risk children. The revenue shall be allocated: 69.50% for common school districts, 19.25% for the institutions under the authority of the Oklahoma State Regents for Higher Education, 3.25% for the Oklahoma Department of Career and Technology Education, and 8% for the State Department of Education. It requires that the teacher salary increases funded by this measure raise teacher salaries by at least $5,000 over the salaries paid in the year prior to adoption of this measure. It requires an annual audit of school districts' use of monies from the fund. It prohibits school districts' use of these funds for increasing superintendents' salaries or adding superintendent positions. School districts' use of the revenue will be audited annually. The Article does not provide for an audit requirement or salary restriction for the other state institutions which will receive revenue from the fund. It The Article requires that monies from the fund not supplant or replace other educational funding. If the Board of Equalization determines funding has been replaced, the Legislature may not make any appropriations until the amount of replaced funding is returned to the fund. The Article takes effect on the July 1 after its passage.

¶11 We agree that the ballot title is misleading if it does not mention the Board of Equalization's role in limiting appropriations. In addition, the ballot title should refrain from partiality and should clarify the amount of the sales and use tax as well as its allocation. We do not agree with Petitioners that the ballot title must reflect items that are not provided in the proposed Article. The Petitioners' amendments to the rewritten ballot title, however, exceed the statutory maximum number of words. Title 34 O.S. Supp. 2015, § 9 (B) (1) provides that a ballot title shall not exceed two hundred (200) words. The Petitioners' proposed amended ballot title is two hundred and fourteen (214) words. After considering the briefs and the proposed ballot titles we hereby, pursuant to the authority vested in this Court by 34 O.S. Supp. 2015, § 10 (A)[6] , correct and amend the ballot title to read as follows:

This measure adds a new Article to the Oklahoma Constitution. The article creates a limited purpose fund to increase funding for public education. It increases State sales and use taxes by one cent per dollar to provide revenue for the fund. The revenue to be used for public education shall be allocated: 69.50% for common school districts, 19.25% for the institutions under the authority of the Oklahoma State Regents for Higher Education, 3.25% for the Oklahoma Department of Career and Technology Education, and 8% for the State Department of Education. It requires teacher salary increases funded by this measure raise teacher salaries by at least $5,000 over the salaries paid in the year prior to adoption of this measure. It requires an annual audit of school districts' use of monies. It prohibits school districts' use of these funds for increasing superintendents' salaries or adding superintendent positions. It requires that monies from the fund not supplant or replace other educational funding. If the Oklahoma Board of Equalization determines funding has been replaced, the Legislature may not make any appropriations until the amount of replaced funding is returned to the fund. The article takes effect on July 1 after its passage.

CONCLUSION

¶12 For the foregoing reasons, we grant Petitioners' Application to Assume Original Jurisdiction, deny relief requested concerning the gist of the measure, find the rewritten ballot title deficient, and rewrite the ballot title pursuant to our authority in 34 O.S. Supp. 2015, § 10. Due to the exigencies related to the element of time affecting the situation involved herein, the usual 20-day period allowed by Okla.Sup.Ct.R. 1.13, 12 O.S. 2011, ch. 15, app.1, for the filing of petitions for rehearing generally, is, as applied to this case, reduced to 5 business days from the date of this opinion.

APPLICATION TO ASSUME ORIGINAL JURISDICTION IS GRANTED;
CHALLENGE OF THE GIST IS UNTIMELY; BALLOT TITLE DECLARED
DEFICIENT AND IS HEREBY AMENDED BY THIS COURT PURSUANT TO
TITLE 34 O.S. SUPP. 2015, § 10.

¶13 REIF, C.J., COMBS, V.C.J., KAUGER, WINCHESTER, and TAYLOR (by separate writing), JJ., concur.

¶14 EDMONDSON (by separate writing) and GURICH, JJ., MITCHELL, S.J. and THORNBRUGH, S.J., concur in part and dissent in part.

¶15 WATT and COLBERT, JJ., disqualified.

FOOTNOTES

[1] The "pamphlet" is a combination of the (initiative) petition and the attached sheets for signature. Title 34 O.S. 2011, § 3. The signature sheets are the only place where the gist of the measure is found. Id. In fact, 34 O.S. 2011, § 3 is the only section in the Initiative and Referendum statutes (34 O.S. §§ 1-27) that mentions the word "gist."

[2] On May 27, 2016, the Secretary of State filed a corrected certification with this Court.

[3] Title 34 O.S. Supp. 2015, § 8 (I) provides in pertinent part "[a]ny such objection must be filed within ten (10) business days after publication and must relate only to the validity or number of the signatures or a challenge to the ballot title."

[4] Curiously, subsections C and D of 34 O.S. Supp. 2015, § 8, which provide for this Court's review of the pre-circulation objection, never again mention constitutionality. Subsection C requires this Court to fix a day at which time we will hear testimony and arguments for and against the sufficiency (not constitutionality) of the petition (not the gist found on the signature sheets). Subsection D then provides, after such hearing, this Court shall decide whether the petition is in the form required by the statutes.

[5] Petitioners' frustration is understandable. They are correct in asserting the first publication of notice did not inform anyone about challenging the gist of the measure. Title 34 O.S. § 8 never mentions when a gist may be challenged nor requires any notice for such a challenge. The problem is compounded because 34 O.S. § 8 only requires proponents of an initiative petition to initially file a petition with the Secretary of State prior to circulation. It does not require any signature sheets containing the gist to be filed at the pre-circulation stage. A clearer process would be to require the proponents to also initially file a copy of the gist which will appear on the signature sheets and for the Secretary of State to publish that gist with the initial notice as provided for in 34 O.S. § 8 (B). In addition, provisions should be made for notice allowing objections to the gist and inclusion of the gist in our review of the initial objections. Subsections B, C and D should adequately reflect that an objection may be made and review may be had as to the constitutionality and/or sufficiency of the petition and the gist. Subsection B only indicates a person may initially challenge the constitutionality of the petition yet, as mentioned, strangely subsections C and D only refer to sufficiency and proper form, not constitutionality of the petition.

[6] Title 34 O.S. Supp. 2015, § 10 (A) provides:

A. Any person who is dissatisfied with the wording of a ballot title may, within ten (10) business days after the same is published by the Secretary of State as provided for in subsection I of Section 8 of this title, appeal to the Supreme Court by petition in which shall be offered a substitute ballot title for the one from which the appeal is taken. Upon the hearing of such appeal, the court may correct or amend the ballot title before the court, or accept the substitute suggested, or may draft a new one which will conform to the provisions of Section 9 of this title.

 

 

Taylor, J., with whom Kauger and Winchester, JJ., join, concurring:

¶1 The crucial purpose of the gist and the ballot title is to inform citizens. The information in the gist and the ballot title must be correct, clear, and direct and adequately explain the proposed changes. See 34 O.S.2011, § 3; 34 O.S.Supp. 2015, § 9; In re Initiative Petition No. 397, State Question 767, 2014 OK 23, ¶ 50, 326 P.3d 496, 515; In re Initiative Petition No. 384, State Question 731, 2007 OK 48, ¶ 7, 164 P.3d 125, 130. Today's majority opinion is an important step in providing correct information to the voters. For that reason, I concur.

¶2 In January, I dissented, joined by Justices Kauger and Winchester, to this Court's opinion finding the petition constitutional and pointed to very serious flaws in the gist and ballot title that were originally proposed. In re Initiative Petition No. 403, State Question No. 779, 2016 OK 1, 367 P.3d 472 (Taylor, J., dissenting). I stand by every word of my dissent. Interestingly, the Attorney General also recognized several serious problems with the ballot title and, by inference, problems with the gist. He directed revisions in the ballot title, but it was too late to correct the misinformation caused by the flawed gist, and the Attorney General did not go far enough.

¶3 I concur with this majority opinion. It recognizes the many flaws with the ballot title, and, by relation, the gist, although it is too late to repair the fatally flawed gist, and properly re-writes the ballot title to a correct legal standard. This opinion insures the right of citizens to be properly informed.

¶4 In the previous dissent, we pointed out that the power granted to the State Board of Equalization was missing from the proposed gist and ballot title. That crucial information should have been there from the start, but it was not. That information is now included in the ballot title and should have been included in the gist.

¶5 I strongly concur with the majority opinion that this proposed one cent per dollar sales tax increase, which is actually a 22% increase in the state sales tax, must be presented in a clear and concise format. All previous descriptions of this proposed state sales tax increase have been very ambiguous. This proposed tax increase is made clear by the re-written ballot title, but too late to inform those who signed the initiative petition.

¶6 It is important that the majority opinion details for the voter the amounts of this proposed tax increase that will be given to each area of education. That is again critical information given to the voter, but not to the signers of the petition.

¶7 The concerns in our previous dissent have been acted upon. The dissent's initial concerns about the information contained, and not contained, in the gist have been sustained by the Attorney General and now by this majority opinion of our Court. The gist was at the top of each signature sheet that was circulated and signed by thousands of citizens and should have contained the revised language adopted by the majority opinion. The information provided by the gist has been inferentially found by this majority opinion to be flawed. If the information was important enough to be required in the ballot title, it certainly was important enough to have been in the information provided to those citizens who were asked to sign the petition.

¶8 This Court's mission and mandate is to insure that voters are timely, fairly, and fully informed before they undertake the solemn duty of consideration of amendments to our Constitution. For information in a petition's gist to be timely and fair, I would require that the gist be challenged within the same ten day time frame for challenging the constitutionality of a petition. In re Initiative Petition No. 403, State Question No. 779, 2016 OK 1, 367 P.3d 472 (Taylor, J., dissenting); In re Initiative Petition No. 403, State Question No. 779 2016 OK 59, ___ P.3d ___ (Taylor, J., dissenting) (not yet released for publication); see In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ___ P.3d ___ (not yet released for publication). Importantly, this Court's redraft of the ballot title finally presents a fair statement of the proposition's effect. Unfortunately, it is too late to properly inform the initiative petition's signatories, but, with this Court's redraft of the ballot title, voters will have the opportunity to cast an informed vote.

 

 

EDMONDSON, J., Concur in Part and Dissent in Part, joined by GURICH, J., and MITCHELL, S.J., and THORNBRUGH, S.J.

¶1 I concur with the Court's treatment of the ballot title but disagree how the challenge to the gist should be adjudicated. I write to explain why the Court is required to address a challenge to the gist of the petition. I conclude that the gist did not create a fraudulent initiative petition process and the matter should proceed with a corrected ballot title.

¶2 Prior to 2015, the statutory procedure authorized a person to file objections to proposed law prior to circulation of an initiative petition by filing an objection to the law's ballot title.[1] An objection to a proposed law based upon its constitutionality could be made after signatures had been collected.[2] The proper time to challenge the gist was not specified by statute.

¶3 In 2015 the Legislature specified that a protest raising a constitutional issue may be made and heard by the Court prior to collection of signatures.[3] This new legislation also states that an objection made after collection of the signatures "must relate only to validity or number of the signatures or a challenge to the ballot title."[4] Again, this legislation is silent on the express issue of when a challenge is made to the gist of an initiative petition.

¶4 This Court has reviewed a challenge to a gist made in protest proceedings after collection of signatures. For example, we have performed this review in cases from 1990 (three times), 1991 (twice), 1994, 1995, 1996, and 2007.[5] During this period the Court also explained when the Legislature does not amend a statute after the Court's construction of that statute then such amounts to "legislative acquiescence to that construction."[6] This principle has remain unchanged and is a current method for understanding legislative intent.[7] If no change had been made in the statutory protest procedures, then the legislative silence would be legislative acquiescence to a procedure allowing a challenge to a gist in proceedings after collection of the signatures.

¶5 The issue becomes: in 2015 when the Legislature stated that an objection made after collection of the signatures "must relate only to validity or number of the signatures or a challenge to the ballot title," was this language a break in legislative silence and the Legislature intended to include challenges made to the gist of an initiative petition as untimely challenges when made after collection of the signatures? The 2015 amendment expressly discusses challenges based upon constitutionality of the proposal, ballot title, and sufficiency of the signatures. The 2015 amendment does not mention challenges to a gist.

¶6 Generally, when determining legislative intent we have followed the rule that the mention of one thing in a statute implies exclusion of something else, "expressio unius est exclusio alterius," but application of this rule is not allowed to override a contrary legislative intent[8] or to create an unconstitutional construction of a statute.[9] The purpose of the gist "is to prevent fraud, deceit or corruption in the initiative process."[10] Our opinions entertaining challenges to a gist recognize a legally cognizable right by a challenger to judicially defeat an initiative petition based upon a legally invalid gist, because noncompliance with the statutory provision for the gist is fatal to an initiative petition.[11] We have explained "the Legislature has deemed the gist a necessary part of the pamphlet and we are not at liberty to ignore that requirement, since we must presume that the Legislature 'expressed its intent' in creating the gist requirement and 'that it intended what it so expressed.'"[12] Judicial protest challenges to the gist is the method by which this Court does not ignore the requirements set by the Legislature.

¶7 In the previous proceeding involving this initiative petition and these parties, this Court declined to determine whether the gist was proper, although three members of this Court examined the gist in a dissenting opinion in proceeding 2016 OK 1. The Court's opinion takes a statute which is poorly worded on the issue of a challenge to the gist and raises it as a bar to adjudicating the legal propriety of the gist. Twenty years ago this Court explained in the context of a jurisdictional statute that a poorly written statute would not be implemented by this Court in a manner which was a procedural trap for the unwary.[13] The integrity of the judicial process is protected in the present proceeding by affording a judicial remedy to parties seeking to challenge the gist who are seeking to use the remedy recognized by this Court for the previous twenty years. The principle of due process applies to judicial proceedings as well as quasi-judicial proceedings and legislative enactments.[14] Construing the implication of newly amended statutory language as requiring challenges to the gist to occur prior to collection of signatures requires making the Court's ruling on this point as prospective as to the parties before the Court.[15] While providing a judicial enforcement mechanism of a "political right" may not be required by due process,[16] this Court has not treated a challenge to a gist as enforcement of a political right, but a legal right possessed by an Oklahoma voter to have fraudulent initiative petitions be judicially disapproved. Public policy favors the integrity and purity of a ballot free from fraud.[17] I would thus construe the legislative intent behind the new language in the 2015 amendment as not changing this Court's recognition of a judicial remedy for voters who want to challenge a gist in an initiative petition.

¶8 This Court may, consistent with due process and in the absence of an express statutory procedure, create a legal procedure for the judicial enforcement of a legal right[18] by requiring a challenge to a gist to be made prior to circulation of the petition and at the time a challenge to constitutionality is made. But application of such a rule must be predicated upon a proponent filing the official gist with the Secretary of State and that gist actually being used for the circulation. If a gist is not filed in a manner which allows a timely pre-circulation challenge, or a different gist is used during circulation, then a post-circulation judicial challenge to a gist must be allowed. But this newly crafted judicial rule of procedure should not be used against these parties.

¶9 Even if the Court determined that the 2015 amendment changed the time to file a challenge to a gist, that statute and this Court's previous order cannot, consistent with due process and fundamental fairness, be used to prevent this Court from providing to these parties a judicial remedy consistent with the long-established practice of this Court.

¶10 The challenge to the gist must be examined, and upon that examination I find nothing to invalidate the petition. In 1995, we explained: The gist of a proposition, which is required by law to appear at the top of each signature page, need only contain "a simple statement of the gist of the proposition."[19] A gist "need not satisfy the more extensive requirements for ballot titles."[20] We explained: "The gist of a proposition must be short. As it must appear at the beginning of every page of the petition, it can contain no more than a shorthand explanation of a proposition's terms."[21] As we have previously explained: "The sole question presented for the court's determination is whether the absence of a more detailed gist statement . . . perpetrates a fraud on the signatories."[22] The issue is not whether a more complete or more accurate gist may be crafted, but whether a gist's inaccuracies amount to fraud or deceit: "We will approve the text of a challenged gist if it is free from the taint of misleading terms or deceitful language."[23]

¶11 I agree with the petitioners that the gist in this case could be better, but I also agree with respondents that possible practical effects of the proposal are not required to be included in a gist.[24] I find nothing fraudulent in the gist that would mislead voters when compared to the new ballot title as written by the Court.

¶12 In conclusion, I would address the challenge to the gist, deny that challenge, and rewrite the ballot title as the Court has done.

FOOTNOTES

[1] In re Initiative Petition No. 397, 2014 OK 23, 326 P.3d 496.

[2] In re Initiative Petition No. 382, 2006 OK 45, 142 P.3d 400.

[3] Laws 2015, c. 193, § 4, (B), (E), emerg. eff. April 28, 2015, amending 34 O.S. 2011 § 8.

[4] Laws 2015, c. 193, § 4, (I), emerg. eff. April 28, 2015, amending 34 O.S. 2011 § 8.

[5] In re Initiative Petition No. 341, 1990 OK 53, 796 P.2d 267, 268, 274; In re Initiative Petition No. 344, 1990 OK 75, 797 P.2d 326, 329; In re Initiative Petition No. 342, 1990 OK 76, 797 P.2d 331, 333; In re Initiative Petition No. 347, 1991 OK 55, 813 P.2d 1019, 1028-1029; In re Initiative Petition No. 348, 1991 OK 10, 820 P.2d 772, 779 (public docket for Okla. Sup. Ct. No. 76, 277 shows the filing of 64 boxes of signatures with the Court prior to its review); In re Initiative Petition No. 360, 1994 OK 97, 879 P.2d 810, 817 (public docket for Okla. Sup. Ct. No. 82,648 shows tabulation of signatures prior to Court's adjudication); In re Initiative Petition No. 362, 1995 OK 77, 899 P.2d 1145 (public docket for Okla. Sup. Ct. No. 84,769 shows tabulation of signatures prior to Court's adjudication); and In re Initiative Petition No. 363, 1996 OK 122, 927 P.2d 558 (public docket for Okla. Sup. Ct. No. 86,375 shows tabulation of signatures prior to Court's adjudication); In re Initiative Petition No. 384, 2007 OK 48, ¶¶ 4-13, 164 P.3d 125.

[6] R. R. Tway, Inc. v. Oklahoma Tax Com'n, 1995 OK 129, 910 P.2d 972, 976.

[7] In re Estate of Dicksion, 2011 OK 96, ¶ 5, 286 P.3d 283, 294, quoting Owings v. Pool Well Service, 1992 OK 159, ¶ 8, n. 10, 843 P.2d 380, 382 ("Failure to amend a statute after its judicial construction constitutes legislative acquiescence to that construction. . . 'Legislative silence, when it has the authority to speak may be considered as an understanding of legislative intent.'").

[8] In re M.S., 2010 OK 46, ¶ 12, 237 P.3d 161, 165, citing Spiers v. Magnolia Petroleum Co., 1951 OK 276, 244 P.2d 852, 856.

[9] Oklahoma Gas & Electric Co. v. Oklahoma Corp. Com'n, 1975 OK 15, 543 P.2d 546, 551 (The Court presumes the Legislature has no legislative intent to enact unconstitutional statutes.); TXO Production Corp. v. Oklahoma Corp. Com'n, 1992 OK 39, 829 P.2d 964, 968-969 (Legislative intent is upheld by this Court when it adopts a construction of a statute that is consistent with the presumed constitutionality as intended by the Legislature.).

[10] In re Initiative Petition No. 363, 1996 OK 122, 927 P.2d 558, 567.

[11] In re Initiative Petition No. 342, 1990 OK 76, 797 P.2d 331, 333.

[12] In re Initiative Petition No. 384, 2007 OK 48, ¶13, 164 P.3d 125, quoting TXO Prod. Corp. v. Okla. Corp. Comm'n, 1992 OK 39, ¶ 7, 829 P.2d 964, 969 and citing Neer v. State ex rel. Okla. Tax Comm'n, 1999 OK 41, ¶ 15, 982 P.2d 1071, 1078.

[13] Bushert v. Hughes, 1996 OK 21, 912 P.2d 2334, 335.

[14] Larry Jones Intern. Ministries, Inc. v. Means, 1997 OK 125, ¶ 9, 946 P.2d 669, 671 ("The constitutional guaranty of due process of law applies to administrative as well as judicial proceedings where such proceedings are quasi-judicial in nature."); City of Edmond v. Wakefield, 1975 OK 96, 537 P.2d 1211, 1213 ("state statutes which attempt to take away vested property interests . . . are unconstitutional as violations of due process.").

[15] Bushert v. Hughes, 1996 OK 21, 912 P.2d at 335, citing of Poafpybitty v. Skelly Oil Company, 1964 OK 162, 394 P.2d 515, 520.

[16] See, e.g., Toliver v. Thompson, 2000 OK 98, 17 P.3d 464, ("The judiciary in this State does not create equitable remedies for challenging elections in District Courts for claims based solely upon political rights."); Macy v. Oklahoma City School District No. 89, 1998 OK 58, 961 P.2d 804, 807-808 (explaining that private individuals do not possess a legally cognizable interest to challenge the creation of a school district in a quo warranto proceeding).

[17] Turner v. State Election Bd., 1946 OK 169, 169 P.2d 285, 287 (Riley, J., concurring specially) ("The public policy in Oklahoma, as evidenced by constitutional provision and statute, amongst other things, is one to preserve the purity of the ballot and to prevent and punish fraud in elections.").

[18] The Oklahoma Constitution guarantees that all courts "shall be open to every person, and a speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Okla. Const. art. 2, § 6.

The Supreme Court does not create election-jurisprudence remedies unknown at common law. Ethics Commission v. Keating, 1998 OK 36, n. 2, 958 P.2d 1250. However, the Legislature's long silence and acquiescence to the Court's construction of both the statutory requirement for a gist and a person's right to challenge a gist show a statutory right enforced by a remedy in this Court. See In re Estate of Dicksion, supra, at n. 7, and R. R. Tway, Inc. v. Oklahoma Tax Com'n, supra, at note 6, and the discussion of legislative acquiescence to the Court's construction of statutes.

[19] In re Initiative Petition No. 362, 1995 OK 77, 899 P.2d 1145, 1150.

[20] In re Initiative Petition No. 362, 1995 OK 77, 899 P.2d at 1150.

[21] In re Initiative Petition No. 362, 1995 OK 77, 899 P.2d at 1150.

[22] In re Initiative Petition No. 363, 1996 OK 122, 927 P.2d 558, 567.

[23] In re Initiative Petition No. 384, 2007 OK 48, ¶ 8, 164 P.3d 125.

[24] In re Initiative Petition No. 384, 2007 OK 48, ¶ 10, 164 P.3d 125






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2016 OK 87, STEELE v. PRUITT
Discussed


 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 53, 796 P.2d 267, 61 OBJ 1641, Initiative Petition No. 341, State Question No. 627, In re
Discussed
 1990 OK 75, 797 P.2d 326, 61 OBJ 1655, Initiative Petition No. 344, State Question No. 630, In re
Discussed
 1990 OK 76, 797 P.2d 331, 61 OBJ 1652, Initiative Petition No. 342, State Question No. 628, In re
Discussed at Length
 2000 OK 98, 17 P.3d 464, 72 OBJ 6, TOLIVER v. THOMPSON
Discussed
 1991 OK 10, 806 P.2d 71, 62 OBJ 566, General Supply Co. v. Pinnacle Drilling Fluids, Inc.
Cited
 1991 OK 55, 813 P.2d 1019, 62 OBJ 1880, Initiative Petition No. 347 State Question No. 639, In re
Discussed
 1991 OK 110, 820 P.2d 772, 62 OBJ 3387, Initiative Petition No. 348, State Question No. 640, In re
Cited
 1992 OK 39, 829 P.2d 964, 63 OBJ 942, TXO Production Corp. v. Oklahoma Corp. Com'n
Discussed at Length
 1992 OK 159, 843 P.2d 380, 63 OBJ 3503, Owings v. Pool Well Service
Discussed
 1994 OK 97, 879 P.2d 810, 65 OBJ 2546, In Re Initiative Petition No. 360, State Question No. 662
Discussed at Length
 1946 OK 169, 169 P.2d 285, 197 Okla. 153, TURNER v. STATE ELECTION BD.
Discussed
 1964 OK 162, 394 P.2d 515, POAFPYBITTY v. SKELLY OIL COMPANY
Discussed
 1995 OK 77, 899 P.2d 1145, 66 OBJ 2313, In re Initiative Petition No. 362 State Question 669
Discussed at Length
 1995 OK 129, 910 P.2d 972, 66 OBJ 3710, R.R. Tway, Inc. v. Oklahoma Tax Comm.
Discussed
 1996 OK 21, 912 P.2d 334, 67 OBJ 700, Bushert v. Hughes
Discussed
 2006 OK 45, 142 P.3d 400, IN RE: INITIATIVE PETITION NO. 382, STATE QUESTION NO. 729
Discussed
 2007 OK 48, 164 P.3d 125, IN RE: INITIATIVE PETITION NO. 384, STATE QUESTION NO. 731
Discussed at Length
 1996 OK 122, 927 P.2d 558, 67 OBJ 3423, In re Initiative Petition No. 363, State Question No. 672
Discussed at Length
 2010 OK 46, 237 P.3d 161, IN THE MATTER OF: M.S.
Discussed
 2011 OK 96, 286 P.3d 283, IN THE MATTER OF THE ESTATE OF DICKSION
Discussed
 1975 OK 96, 537 P.2d 1211, CITY OF EDMOND v. WAKEFIELD
Discussed
 1975 OK 15, 543 P.2d 546, OKLAHOMA GAS & ELECTRIC CO. v. CORPORATION COM'N
Discussed
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed at Length
 2016 OK 1, 367 P.3d 472, IN RE INITIATIVE PETITION NO. 403 STATE QUESTION NO. 779
Discussed at Length
 2016 OK 51, 376 P.3d 250, IN RE INITIATIVE PETITION NO. 409, STATE QUESTION NO. 785
Discussed at Length
 2016 OK 59, IN RE INITIATIVE PETITION NO. 403, STATE QUESTION NO. 779
Discussed at Length
 1997 OK 125, 946 P.2d 669, 68 OBJ 3327, LARRY JONES INTERNATIONAL MINISTRIES, INC. v. MEANS
Discussed
 1951 OK 276, 244 P.2d 852, 206 Okla. 510, SPIERS v. MAGNOLIA PETROLEUM CO.
Discussed
 1998 OK 36, 958 P.2d 1250, 69 OBJ 1672, ETHICS COMMISSION v. KEATING
Discussed
 1998 OK 58, 961 P.2d 804, 69 OBJ 2254, MACY v. OKLAHOMA CITY SCHOOL DIST. NO. 89
Discussed
 1999 OK 41, 982 P.2d 1071, 70 OBJ 1551, Neer v. State ex rel. Oklahoma Tax Commission
Discussed
Title 34. Initiative and Referendum
 Cite
Name
Level

 34 O.S. 3, Petitions and Signatures
Discussed at Length
 34 O.S. 8, Filing Copy of Proposed Petition - Publication - Protest - Hearing and Determination - Signature Gathering Deadline
Discussed at Length
 34 O.S. 9, Ballot Title - Filing - Review - Appeal
Discussed at Length
 34 O.S. 10, Appeal Upon Question of Ballot Title
Discussed at Length